WILLIAM BASSETT vs. GEORGE E. ROGERS & another.

Suffolk.   November 22, 1895. — February 29, 1896.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & LATHROP, JJ

*Sale of Land — Principal and Agent — Action for Excess of Price retained by Agent — Implied Agreement.*

If an agent is authorized to sell the property of his principal at a certain price or for certain property in exchange, and the agent sells it for a higher price or for more valuable property in exchange, retaining the difference himself and concealing that fact from his principal, the latter, upon discovering it, may maintain an action against the agent for the excess so received by him, and, if such excess is in specific property, he is entitled to that or its value in money.

By separate written agreements, both executed on the same day, A. and B. each bound himself to convey his land to the order of C. for a consideration named, and to pay him a brokerage commission for effecting a sale of it; and C. agreed in writing to place for A. a mortgage of $1,000 for one year at six per cent on certain land, and meantime to advance $1,000 on the agreement. Subsequently A., by the direction of C., conveyed his land to B., and gave to C. an order to receive the consideration. C. collected from B. a larger sum than the consideration named, receipted for it, and, after paying over to A. the price named by him, retained for himself the excess which he had received from B. C. placed the mortgage and advanced the $1,000 as agreed, and A. afterwards paid C. his brokerage commission. In an action by A. against C. to recover the excess so retained by him, the jury found that C. was acting as the agent of A. *Held,* that the action could be maintained, and that no agreement by A. to pay C. any compensation for lending the $1,000 could be implied beyond the promise to pay the loan with interest.

TORT, against George E. Rogers and P. Briggs Wadsworth, to recover the value of twenty-five shares of the stock of the Union Pacific Railway Company, and the value of a promissory note of one C. C. Homer for $269.90, alleged to have been wrongfully withheld from the plaintiff, and converted by the defendants to their own use. Writ dated June 15, 1891.

After the former decision, reported 162 Mass. 47, the case was tried in the Superior Court, before *Hammond,* J., who allowed a bill of exceptions, in substance as follows.

The plaintiff testified that, in June, 1888, he was engaged in building a block of brick houses on Dalton Street in Boston; that he asked the defendant Rogers, who was a real estate broker, if he could get him a customer for some of his buildings, and Rogers said that he could; that shortly afterwards

Rogers informed him that he had a customer for the house
25 Dalton Street, who would, among other things, give some
land in Chelsea and Melrose in exchange, and wanted him to
look it up ; that the plaintiff looked over the property in ques-
tion, and told Rogers that he would trade for it; and that
Rogers then brought him a paper to sign, which he did sign.
By this instrument, which was dated August 28, 1888, and
which is referred to as " Exhibit 2," the plaintiff agreed to
sell and convey " to the order of George E. Rogers and P.
Briggs Wadsworth " a parcel of land with the buildings thereon,
situated on Dalton Street in Boston, receiving in payment there-
for the real estate and personal property named and described
in a memorandum annexed to the agreement, and " to pay to
George E. Rogers and P. Briggs Wadsworth a brokerage com-
mission of three hundred and fifty dollars."

The several parcels of real estate and articles of personal
property named in the memorandum annexed to the agreement,
with their respective values, were : 18,400 feet of land, Sum-
mer Street, Chelsea, $2,300; 14,080 feet of land, Melrose, $2,112;
5,000 feet of land, Orange Street, Chelsea, $2,000; lease on
Chestnut Street, Boston, guaranteed to net $925 ; 2 shares Leav-
enworth and Topeka Railroad stock, $200; amounting in all
to $7,537.

On September 5, 1888, the plaintiff signed another paper,
referred to as " Agreement C," which recited that he agreed
" to accept in payment for said lot and building " the parcels
of real estate and the personal property named in the above
memorandum, and which also contained a statement, signed by
the defendants, that they " hereby agree to place mortgage, one
year at six per cent, one thousand dollars on Orange Street
land as soon as it is available, and meantime to advance one
thousand dollars on agreement to give said mortgage, taking
temporarily said lease and stock as collateral that mortgage
shall be given."

On August 28, 1888, one Alfred Blanchard also agreed in
writing to sell and convey " to the order of " the defendants
certain parcels of real estate and certain articles of personal
property, agreeing to receive in payment therefor the house of
the plaintiff, on Dalton Street in Boston, and to pay to the

defendants "the usual brokerage commission of two and one half per cent on value of land as per above schedule."

The schedule referred to was as follows: 18,400 feet land, Summer Street, Chelsea, $1,840; 5,000 feet land, Orange Street, Chelsea, $2,000; 25 shares Union Pacific $61\frac{50}{100}$, $1,537.50; 14,080 feet land, Melrose, $1,408; lease, Chestnut Street, Boston (guaranteed), $925; note due September 29 (guaranteed), $269.90; amounting in all to $7,980.40.

The plaintiff further testified as follows: "I carried out the agreement or agreements that are in Exhibit 2, and received the conveyance of all the property described therein, including the Chelsea and Melrose property, and the two shares of Leavenworth and Topeka stock, and conveyed the Dalton Street house to Alfred Blanchard's wife. Subsequently, at Rogers's request, I signed an order on Blanchard for the personal property described in Exhibit 2. I paid a commission of $350 to the defendants, being the amount required by Exhibit 2. I did not know, until informed by Blanchard about a year afterwards, that the defendants had received as part of the purchase money of said house the 25 shares of Union Pacific Railroad stock and the Homer note. Shortly after I learned this I demanded the stock and note of Rogers. He declined to deliver them, and said that they did not belong to me. My counsel made a formal demand, on July 10, 1890, on the defendants, for the stock and note. I did not meet Blanchard until a considerable time after the trade was carried out. The defendants performed everything which they in Exhibit 2 agreed to perform, about placing a mortgage and advancing $1,000. I have never given up or offered to give up to the defendants the Leavenworth and Topeka stock, or to pay them any compensation for their services in taking the mortgage on the property referred to in Exhibit 2. I did not consider the Leavenworth and Topeka stock worth anything when I took it, and did not know that Rogers owned it, but supposed, until a long time afterwards, that Blanchard owned it."

Upon the order for the delivery of the personal property the defendant Rogers wrote: "Received of Alfred Blanchard, in compliance of this order, 25 shares of stock of Union Pacific Railroad, at $61.50 per share, $1,537.50; lease of estate, 43 Chestnut Street, Boston, $925.00; note of C. C. Homer, Mal-

den, Mass., due Sept. 29 – Oct. 2, 1888, $266.90. Same being in full to cover the personal property described in an agreement of Alfred Blanchard to purchase of Wm. Bassett estate of Dalton Street, Boston. Geo. E. Rogers, and for P. Briggs Wadsworth."

Alfred Blanchard, a witness called by the plaintiff, testified that he carried out his part of the trade, and delivered to Rogers all the property which he agreed to transfer in exchange for the house, and paid him the commission called for by the agreement; that, when Rogers brought the order from the plaintiff for the delivery of the property, the witness said he did not care to deliver on that, and wanted to enumerate what he was to deliver; that he then wrote across the face of it a detail of the property, and Rogers signed it; that he then delivered to him the twenty-five shares of Union Pacific stock and the Homer note; and that in February, 1889, the witness informed the plaintiff that the Union Pacific stock and the Homer note were a part of the property which he had given in exchange for the house.

The defendant Rogers, after testifying to an interview with Blanchard in relation to trading for the plaintiff's house on Dalton Street, further testified, among other things, as follows: " I sent for the plaintiff and told him that I had a friend who was thinking of buying an apartment house; that I could sell him one of several, or I could sell him his. He asked me what he would give, and I said, ' There are some things which he will give that I will give you, and some things I won't give you.' He asked if there was any cash in it. I said no, but that there were some things as good as cash, and that I should keep them myself if the trade was put through. I made a minute on an envelope, and showed him a list of the different items of property which I proposed to give him, which list included all on the Blanchard list, except the Union Pacific stock and note, and added thereto the Leavenworth and Topeka stock. In a day or two he came in and said that he would like to make the trade, and was willing to pay me a double commission, as he would have to pay it to some one. I sent for Blanchard and told him that I could put the sale through. The plaintiff asked me what I was going to get out of it; I told him that I should tell him when the papers were signed. In my conversation with Blan-

chard I told him that some of the items which he exchanged or gave in trade I should keep, and some I should give to the plaintiff. I said that I thought I should keep the Chestnut Street lease, the Union Pacific stock, and the Homer note. The papers were exchanged shortly afterwards. . . . The Leavenworth and Topeka stock was not stock which I received from Blanchard, but was some of my own."

The plaintiff called an expert witness, and offered to prove by him the value of Leavenworth and Topeka stock; but the defendants objected to the introduction of such evidence, and it was excluded.

The defendant Rogers, being asked on cross-examination if he regarded Leavenworth and Topeka stock as of much value, replied, " I do not think it has much value." While this defendant was on the stand the plaintiff handed to him the certificate of the two shares of that stock in question, duly assigned in blank, and offered to make him a present of it, but he rejected it, and cast it upon the floor.

The defendants requested the judge to instruct the jury as follows :

" 1. Exhibit 2, with its accompanying papers, if accepted by the defendants, constituted a contract between the plaintiff and the defendants, binding the plaintiff to sell to the order of the defendants the Dalton Street house for certain considerations therein named. If the defendants had fully performed their part of said contract, and the plaintiff has received all the benefits of the contract, the plaintiff cannot now repudiate the contract without returning, or offering to return, the considerations which he has received.

" 2. As the plaintiff has not returned, or offered to return, to the defendants the Leavenworth and Topeka stock, or to make compensation in any way to the defendants for the benefits sustained by the plaintiff for the loan of $1,000, he is not entitled to maintain this action.

" 3. The plaintiff's action cannot be maintained because he has not rescinded or offered to rescind the contract shown in Exhibit 2."

The judge declined so to rule, and instructed the jury in terms to which no exception was taken.

The jury returned a verdict for the plaintiff in the sum of $2,201.73 ; and the defendants alleged exceptions.

*R. M. Morse*, for the defendants.

*F. W. Kittredge & W. H. Drury*, for the plaintiff.

FIELD, C. J.   This case was once before this court, and is reported in 162 Mass. 47.   After that decision a trial was had and a verdict rendered for the plaintiff, and damages were assessed to the amount of the value of the twenty-five shares of the stock of the Union Pacific Railroad Company, and of the promissory note of C. C. Homer.   The defendants made certain requests for instruction to the jury, which the court declined to give.

It appears that at the trial the plaintiff offered to prove by an expert the value of the two shares of the stock of the Leavenworth and Topeka Railroad Company, but the defendants objected to the admission of the evidence, and it was excluded. The exceptions also recite as follows : " The defendant Rogers, being asked on cross-examination if he regarded Leavenworth and Topeka stock as of much value, replied, ' I do not think it has much value.'   While this defendant was on the stand the plaintiff handed to him the certificate of the two shares of that stock in question, duly assigned in blank, and offered to make him a present of it, but he rejected it, and cast it upon the floor."

The question is whether it was necessary for the plaintiff before bringing the suit to return or offer to return to the defendants the shares of Leavenworth and Topeka Railroad stock, and to pay or offer to pay to them the loan of $1,000 ; or to offer to pay to them a reasonable compensation for the lending to the plaintiff of $1,000, which we infer was lent to him by one or both of the defendants, and was ultimately secured by a mortgage on the Orange Street property.   This property was received by the plaintiff from Blanchard, and the money was lent according to the promise of the defendants to the plaintiff shown in " Agreement C," which is to be considered as a modification of the agreement marked " Exhibit 2."

If the defendants are regarded as purchasers from the plaintiff, of course the action cannot be maintained, as the plaintiff has received all he agreed to sell for, and there is no ground on which he could rescind the transaction.   But as the defendants

have been found by the jury to be the agents of the plaintiff, and to have sold the plaintiff's property to Blanchard as such agents, there is nothing to rescind.    They were authorized to sell the property at a certain price, or for certain property in exchange, and they have in fact sold it for a higher price, or for more valuable property in exchange.    If they had sold it for less than they were authorized to sell it for, perhaps the plaintiff could not complain if they made up the difference out of their own property ; but having sold it for more, the plaintiff, if he so elects, is entitled to the excess, and as the property given in exchange was not money, but specific property, he is entitled to what they got in exchange or its value.    It may be assumed that, on recovering this, the two shares of the Leavenworth and Topeka Railroad stock become the property of the defendants ; but, if so, a tender of them at the trial was sufficient, and probably no tender at all was necessary, as the shares, on the finding of the jury, were not received under any contract which the plaintiff has attempted to rescind.    On the finding of the jury, the agreements of the plaintiff only fixed a minimum price at which the defendants might sell, and these agreements do not prevent the plaintiff from recovering all the defendants sold the property for if they sold it for more than the minimum price.

The plaintiff never agreed to pay the defendants any compensation except interest for the lending to him of a thousand dollars for one year at six per cent.    Under their agreement with him and on the facts in this case, no agreement to pay compensation in addition to the payment of the loan with interest can be implied.    We infer that the thousand dollars with interest had been paid to the defendants before the trial of the case the second time, as it was payable in one year from the time when the loan was made.    There is no contention concerning this, and for the reasons hereinbefore given it was not necessary to repay this money before bringing the suit.

                                        *Exceptions overruled.*