·TASSE, Appellant, vs. KINDT, Respondent.

*November 19, 1910—February 21, 1911.*

*Real-estate brokers: Middlemen: Commissions from both parties.*

A broker who undertakes merely to procure a purchaser for land at a price fixed by the seller is in reality only a middleman and is entitled to the agreed commission for such service even though, by an agreement unknown to the seller, he is also to receive a commission from the purchaser.    SIEBECKER, J., dissents.

APPEAL from a judgment of the circuit court for Milwaukee county: W. J. TURNER, Circuit Judge.    *Reversed.*

This action was brought to recover a commission of $400 for services rendered by plaintiff in procuring for the defendant a purchaser of certain real estate owned by the defendant. The defendant denied generally the allegations of the complaint.    The action was here on a former appeal.    125 Wis. 631, 104 N. W. 703.    The case was again tried in the court below and the following verdict returned:

"(1) Was it agreed between the plaintiff and defendant on or about August 15, 1899, that if a purchaser of the defend-

ant's eleven acres should be procured by the plaintiff at the highest price obtainable and satisfactory to said defendant, that the defendant would pay the plaintiff two per cent. commission upon the amount obtained? *A.* Yes.

"(2) If you answer 'Yes' to question No. 1, then answer: Was such agreement modified on or about August 20, 1902, by the defendant fixing the price at which the plaintiff should offer said property, being a tract of ten acres, at $2,000 per acre? *A.* Yes.

"(3) Was said eleven acres sold by defendant to Read and Neacy as an entire piece, and at the uniform price of about $1,909.09 per acre? *A.* Yes.

"(4) Did said plaintiff procure Read and Neacy as purchasers for ten acres of said property ready, willing, and able to purchase said ten acres at $2,000 per acre? *A.* Yes.

"(5) Did the plaintiff, prior to August 20, 1902, accept employment at compensation from T. J. Neacy and Walter Read to purchase the property mentioned in the complaint from the defendant for them? *A.* Yes.

"(6) If you answer question No. 5 'Yes,' then answer: Did the plaintiff inform the defendant that he had an agreement with Read and Neacy to receive a commission from them for negotiating the sale with the defendant? *A.* No.

"(7) If you answer 'Yes' to question No. 5, did such employment continue until about September 10, 1902? *A.* No.

"(8) Was the plaintiff in the employ of both Read and Neacy and the defendant at the time he was endeavoring to effect a purchase and sale of the property? *A.* No.

"(9) If the court shall be of the opinion that the plaintiff is entitled to recover, at what sum do you assess his damages? *A.* To be decided by the court."

Both parties moved for judgment on the verdict. The motion of the defendant for judgment on the verdict also included a motion that the answer of the jury to the first question of the special verdict be changed from Yes to No; that the answer of the jury to the second question be changed from Yes to No; that the answer of the jury to the fourth question be changed from Yes to No; that the answer of the jury to the seventh question be changed from No to Yes; and that

the answer of the jury to the eighth question be changed from No to Yes. On such motion the court changed the answer to the seventh question from No to Yes, and the answer to the eighth question from No to Yes, and denied defendant's motion to change answers to other questions in the special verdict. The court denied plaintiff's motion for judgment on the verdict, and ordered judgment in favor of the defendant dismissing the plaintiff's complaint with costs. Judgment was entered accordingly, from which this appeal was taken.

*Fred Doering,* for the appellant.

For the respondent the cause was submitted on the brief of *J. M. Clarke.*

The following opinion was filed December 6, 1910:

KERWIN, J. By the answers to the first, second, and fourth questions of the special verdict as found by the jury, which the court below refused to change, it is established that it was agreed between plaintiff and defendant on or about August 15, 1899, that if a purchaser of the defendant's eleven acres should be procured by the plaintiff at the highest price obtainable and satisfactory to the defendant, the defendant would pay plaintiff two per cent. of the amount obtained as commission, and that this agreement was modified on or about August 20, 1902, by the defendant fixing the price at which the plaintiff should offer defendant's property, being a tract of ten acres, at $2,000 per acre, and that the plaintiff did procure purchasers for said ten acres who were ready, willing, and able to purchase the same at $2,000 per acre. These findings of the jury are supported by the evidence, and alone are sufficient to entitle the plaintiff to recover independent of other findings in the special verdict, under the established rule of this court. *Kilpinski v. Bishop,* 143 Wis. 390, 127 N. W. 974; *Donohue v. Padden,* 93 Wis. 20, 66 N. W. 804; *Barry v. Schmidt,* 57 Wis. 172, 15 N. W.

24; *Stewart v. Mather,* 32 Wis. 344, 355; *Orton v. Scofield,* 61 Wis. 382, 21 N. W. 261. Under the modified contract, as found by the jury, the contract of the plaintiff with the defendant was a specific one, namely, to procure a purchaser able, ready, and willing to pay $2,000 per acre for ten acres of the land. The price was fixed by the defendant and the services to be performed specific, upon the performance of which plaintiff was entitled to his compensation. The fact that plaintiff had a contract with the purchaser for a commission in no manner conflicted with his duty to the defendant. This rule is recognized by this court in the cases above cited as well as by other courts. *Mullen v. Keetzleb,* 7 Bush, 253; *Rupp v. Sampson,* 16 Gray, 398. Of course if the plaintiff occupied a position which required diligence in obtaining as high a price for the defendant's land as possible, or if the contract between the parties were such as to render the contract of the plaintiff with the purchaser at variance with his duty to the defendant, a very different question would be presented. Both contracts could not stand together, because the two engagements would be inconsistent. This rule was aptly stated by this court on the former appeal (125 Wis. 631, 104 N. W. 703), at page 633:

"An agent who undertakes the duty of making a sale for another, or performing a duty in that connection involving diligence in promotion of the employer's interest, cannot recover commission if, without the seller's knowledge, he also be employed upon compensation to work in the interest of the purchaser."

This rule is relied upon by counsel for respondent on this appeal, but it is inapplicable. On the former appeal there was a general verdict, and the jury might well have found under the original contract that the plaintiff was to procure a purchaser at the best price obtainable, and of course under such an agreement plaintiff could not accept compensation from the purchaser and at the same time recover from the

seller.  But in the present case the jury found specifically
that the original contract had been modified, and that the
defendant had fixed his own price at $2,000 per acre, and the
only duty which plaintiff owed defendant was to produce a
purchaser able, ready, and willing to pay $2,000 per acre.
When he had done this he had performed his contract with
defendant, and was entitled to his commission regardless of
any contract which he had with the purchaser.  *Kilpinski
v. Bishop, supra; Donohue v. Padden, supra.*  Where the
character of the employment of the agent is such that com-
pensation from the purchaser cannot affect his fidelity in the
performance of his duty to the seller, as for example where
he is a mere middleman, or employed only to produce a pur-
chaser at a fixed price, the rule that he cannot act for both
parties does not apply.  *Tasse v. Kindt,* 125 Wis. 631, 104
N. W. 703.  It follows, therefore, that the fact found by the
jury to the effect that prior to August 20, 1902, plaintiff ac-
cepted employment at compensation from Neacy and Read
is not material, since under his specific contract with the de-
fendant, as found by the jury, he was at liberty to do so.
The distinction is clearly drawn in the decisions in this court
heretofore referred to.  In *Stewart v. Mather,* 32 Wis. 344,
at page 355, Chief Justice Dixon, speaking for the court,
said:

"A broker whose undertaking merely is to find a purchaser
at a price fixed by the seller, or at a price which shall be sat-
isfactory to the seller when he and the purchaser meet, is in
reality only a 'middleman,' whose duty is performed when
the buyer and seller are brought together, and as to whom the
policy of the law which excludes double compensation has
been considered inapplicable."

To the same effect is the late case of *Kilpinski v. Bishop,*
143 Wis. 390, 127 N. W. 974.  It follows, therefore, that
changing the answers to questions 7 and 8 from No to Yes
in no way affected the plaintiff's right to recover, therefore

the court should have ordered judgment in favor of the plaintiff upon the verdict.

*By the Court.*—The judgment is reversed, and the cause remanded with instructions to the court below to render judgment for the plaintiff.

The following opinion was filed December 10, 1910:

SIEBECKER, J. (*dissenting*). The court holds that the plaintiff is entitled to recover upon the verdict as constituted after the trial court changed the jury's findings to questions 7 and 8. The decision is based on the idea which is expressed in the opinion as follows:

"The defendant had fixed his own price at $2,000 per acre, and the only duty which plaintiff owed defendant was to produce a purchaser able, ready, and willing to pay $2,000 per acre. When he had done this he had performed his contract with defendant, and was entitled to his commission regardless of any contract which he had with the purchaser."

This decision, in my opinion, disregards the cardinal ingredient of agency that in case the agent's duties to the seller, under a contract like the one involved here, conflict with those of the buyer, it is illegal. The rule of law is that an agent employed by the owner of real estate to sell the same cannot accept employment from a prospective purchaser thereof if the duties of such employments conflict. The rule is founded on the accepted judgment of mankind, and is based on the idea that a person cannot faithfully serve two masters at the same time when the duties toward the two are necessarily antagonistic. The result of the adjudications on the subject is well expressed and formulated as follows:

"One who employs a broker to find a customer to exchange real estate with him has the right to assume that he is acting solely in his interest, and is not to receive a commission from the customer. If the one principal employing him knows that he is employed by the other principal, then both he and

the broker are guilty of wrong committed against the other principal, and the law will not enforce an executory contract entered into in fraud of the rights of the first employer. . . . 'The transaction itself is void as against public policy and good morals, and both parties thereto being *in pari delicto,* the law will leave them as it finds them.'" 2 Clark & Skyles, Agency, § 765 (*a*).

I cannot conceive how the duties of plaintiff under the respective employments of defendant and the purchasers can be treated as not conflicting. It was declared by this court:

"When an agent is thus employed by one party to sell and by the other to purchase, and is vested with any discretion in the negotiation, his duties are in conflict and in respect to adverse interests, and he cannot fairly serve both parties." *Barry v. Schmidt,* 57 Wis. 172, 15 N. W. 24; *Stewart v. Mather,* 32 Wis. 344; *Meyer v. Hanchett,* 43 Wis. 246; Mechem, Agency, § 972.

The only permissible exception to such double employment is when the agent is acting as a middleman, and is upon the ground that in this relation he contracts to exercise his skill and influence for both parties for bringing them together, but that he is indifferent between them as to the negotiations. *Tasse v. Kindt,* 125 Wis. 631, 104 N. W. 703, and cases cited above. I am unable to agree to the opinion that the subsequent employment of the plaintiff by Neacy and Read, which was unknown to the defendant, made plaintiff a middleman between them and the defendant. Plaintiff's employment by the purchasers was to negotiate in their interest and against that of the defendant for a reduction of the price of defendant's land to less than the $2,000 per acre which he had agreed to obtain for the defendant. These two employments necessarily put the plaintiff in a position wherein he was to use his skill and influence to promote the adverse and conflicting interests of his two employers. This he could not legally do. The fact that the defendant demanded a fixed price and that plaintiff claims to have obtained it finally,

does not purge his double employment of its inherent illegality.

I am, however, of the view that the trial court was not warranted under the evidence in changing the answers to questions 7 and 8 of the special verdict, and that the verdict of the jury should have been approved. Such verdict would entitle plaintiff to recover, for his employment by the purchasers had wholly ceased before he made the special contract with the defendant in August, 1902, under which the jury found that he secured the purchasers at the stipulated price.

A motion for a rehearing was denied February 21, 1911.