PEDERSON, Respondent, vs. JOHNSON, Appellant.

*April 3—May 27, 1919.*

*Brokers: Duty to inform principal: Fraud of broker: Contract: Right of principal to earnest money: Liability to principal: Agreement with subagent: Commissions: Performance of services: Principal and agent: Duty of agent: Taking advantage of relationship: Appeal: Technical objection: Review: Harmless error: Immaterial findings.*

1. In an action by a principal to recover from a defendant broker earnest money forfeited by the purchaser, a finding that defendant was to receive $1,000 for his services is immaterial, where defendant never sold plaintiff's premises and therefore never became entitled to a commission.

2. Where the purchaser under an earnest-money contract in fact paid $1,000 in discharge of his liability, the contention that the court erred in finding that the $1,000 draft deposited by the purchaser as earnest money was paid is technical and without merit, it being immaterial whether the draft was taken up and canceled.

3. Though the defendant broker with whom plaintiff had listed property for sale or trade procured plaintiff's signature to the earnest-money contract under which the purchaser agreed, in case of default, to forfeit such earnest money to defendant, it is *held* that defendant was liable to plaintiff for the amount of earnest money forfeited by the purchaser, the insertion of the clause for defendant's own benefit being unauthorized and plaintiff's signature being procured by fraud.

4. All profits made and advantage gained by an agent in the execution of the agency belong to the principal, whether the result of the performance or of the violation of a duty of the agent, if the fruit of the agency.

5. The fact that the broker had agreed to pay to another a part of the commissions which he was to receive in no way affected his liability to his principal for earnest money forfeited by the buyer and to which the principal was entitled.

6. The broker being an agent to sell and not merely to procure a purchaser ready, able, and willing to purchase, his right to compensation was dependent upon a sale.

7. An agent may not take advantage of the confidential relationship existing between himself and his principal for his own benefit, even though the principal is not injured thereby.

8. Though an agent is to sell at a fixed price it is his duty to keep his principal fully informed, and if he knows that more advantageous terms can be obtained he is under obligation to communicate the facts in reference thereto to his principal, and is liable for failure so to do.

APPEAL from a judgment of the circuit court for Polk county: FRANK A. Ross, Circuit Judge. *Affirmed.*

The plaintiff is a farmer and entered into a contract of agency with the defendant, a real-estate broker, which contract, after describing the property and the amount of incumbrance thereon, recited:

"Lowest price and terms of sale $20,500. This is to certify that I have listed the above described land with *Henry Johnson* for sale or trade for a period of twelve months, and I agree to pay five per cent. commission out of first money received on sale.

"Dated November 23, 1915.      JENS P. PEDERSON."

On February 10, 1916, the defendant, in the name of his principal, entered into a so-called earnest-money contract of sale, which acknowledged the receipt from one A. R. Mudge of $1,000 "as earnest money and in part payment for the payment of the following described property," describing the same property described in the option, "which I have this day sold and agreed to convey to the said A. R. Mudge for the sum of $20,500 on terms as follows, viz.: $1,000 in hand paid as above and $8,000 or more on or before March 1, 1916; $3,000 to be settled by mortgage on above described land; $8,500, now a first mortgage, to be assumed by purchaser, with interest," etc. The option then recited other agreements and continued:

"And it is agreed that if the title to said premises is not good and cannot be made good within thirty days from date when first payment shall become due, this agreement shall be void, and the above mentioned thousand dollars ($1,000) refunded. But if the title to said premises is then good, in

the name of grantor, and said purchaser refuses to accept the said same thousand dollars ($1,000) shall be forfeited to *Henry Johnson* as liquidated damages.

"Jens P. Pederson,

"By Henry Johnson, Agent."

A few days later the defendant secured the plaintiff's signature to a copy of the contract of sale under circumstances found by the trial court as follows:

"I further find that said plaintiff was not, either at the time of signing said Exhibit 4 [copy of earnest-money contract] nor at any time prior thereto, able to write and read the English language, and that the said defendant did not in any manner read or explain the terms of said Exhibit 4 to said plaintiff, but, on the contrary, told said plaintiff that the paper which defendant then signed and there requested said plaintiff to sign was a paper which was necessary to be signed to close the deal and which paper was to be sent to said Mudge to effect that purpose, and that said plaintiff, relying upon the statements thus made to him by said defendant, signed said paper and not otherwise."

This finding is not assailed.   The $1,000 was paid to the defendant by means of a draft, which was deposited for collection and thereafter protested.   The draft was indorsed by one Peltier, a subagent of the defendant, who then went to Minnesota, the home of the purchaser, procured the payment of the $1,000, returned with the money, paid $600 of it to the defendant, and retained the $400 for himself as claimed compensation for his services as subagent.   The purchaser forfeited the earnest money and was released from the contract.   Some time afterwards the plaintiff discovered the fact that $1,000 had been paid on account of the contract and made demand for payment thereof to him, and, upon the defendant's refusal to pay, brought this action to recover the $1,000.   The case was tried by the court without a jury. The court found the material facts as stated and other facts, and upon such findings the plaintiff had judgment for $1,000, from which judgment the defendant appeals.

For the appellant there was a brief by *Kennedy & Yates* of Amery, and oral argument by *W. T. Kennedy.*

For the respondent there was a brief by *McNally & Doar* of New Richmond, and oral argument by *W. T. Doar.*

ROSENBERRY, J.   The defendant contends that the court erred in finding that he was to receive $1,000 for his services as agent, and contends that the court should have found that he was to receive five per cent. commission on the sale price of $20,500.   This finding we consider wholly immaterial in any aspect of the case.   The defendant never sold the premises and never became entitled to any commission.

Defendant's next contention is that the court erred in finding that the draft was paid.   This is purely technical and has no merit.   Whether the draft itself was in fact taken up and canceled is immaterial.   The purchaser under the earnest-money contract of sale paid the $1,000 to Peltier on account and in discharge of his liability under the earnest-money contract.   That fact is undisputed.

The third contention of the defendant is stated by counsel as follows:

"The particular clause in the contract relating to the forfeiture of the $1,000 to *Henry Johnson* as liquidated damages the plaintiff testifies that he knew nothing about, had never authorized, and never agreed to.   If this is true, then the plaintiff was not bound by Exhibit 3 [earnest-money contract], neither would he have any interest whatever in the $1,000, and the disposition of the $1,000 would be wholly a matter between the defendant and purchaser, unless the plaintiff thereafter ratified and agreed to this contract.   On the other hand, if the plaintiff had ratified and agreed to this contract, then the plaintiff agreed that the $1,000 should be forfeited to *Henry Johnson* as liquidated damages."

This argument sounds remarkably like the ancient maxim of "Heads I win, tails you lose."   If the principal ratifies the contract, the earnest money, if forfeited, belongs to the agent by the terms of the contract; if he does not ratify, he

has no interest in it.   The argument ignores the fact that an agent must be loyal to his principal and act with the utmost good faith.   No question as to the ratification of the contract arises in this case.   Long before the plaintiff knew of that part of the contract which provided that the purchaser could forfeit the $1,000 and be released from the contract the $1,000 had been paid and the contract was at an end and was incapable of ratification.

The claim of the defendant that the signature which he procured under the circumstances found by the trial court authorized him to retain the $1,000 is without any merit for the reason that it was obtained by fraud and misrepresentation; so the case must stand upon the original contract as made by the defendant.

From the facts it appears clearly that the defendant, as the agent of the plaintiff, by inserting the forfeiture clause dealt with the property of his principal in a manner unauthorized by the contract of agency; that without authority he inserted in the contract of sale a clause for his own profit, and now seeks to retain the benefit of his misconduct.   No principle in the law of agency is better settled than that the agent may not deal in the business of his agency for his own benefit.   All profits made and advantage gained by the agent in the execution of the agency belong to the principal, and it matters not whether such profit or advantage is the result of the performance or of the violation of a duty of the agency if it be the fruit of the agency.   All profits and every advantage beyond lawful compensation made by  an agent in the business, or by dealing or speculating with the effects of his principal, though in violation of his duty as an agent, and though the loss, if one had occurred, would have fallen on the agent, will, wherever they can be regarded as the fruit or outgrowth of the agency, be deemed to have been acquired for the benefit of the principal.   These elementary principles, stated in the language of one of the most learned writers on agency (1 Mechem, Agency (2d ed.) §§ 1191, 1224, 1225),

are supported by the great weight of authority in every juris-
diction.

"The doctrine is not based on the idea that the transaction
is necessarily an injury to or a fraud upon the principal, but
on the idea of closing the door to temptation to fraud and
keeping the agent's eye single to the rights and welfare of his
principal. And the interdiction is enforced with a strong
hand in courts of justice." 21 Ruling Case Law, 830, § 13.
See, also, "Duties and Liability of Agent to Principal," 2
Corp. Jur. p. 692, § 353.

The fact that the defendant did not authorize the making
of the contract whereby the earnest money of $1,000 might
be forfeited and paid to the agent and the purchaser relieved
from the contract, instead of freeing the agent from liability,
as claimed by the defendant, brings him clearly within the
rule stated and makes him liable. The fact that the defend-
ant had agreed to pay out to another person a part of the
commission which he was to receive in no way affects his lia-
bility to his principal. *Grant v. Hardy,* 33 Wis. 668.

The defendant was not a middleman; he was an agent
pure and simple so far as a sale was concerned. The duties
of the defendant were not limited by his contract to finding
and procuring a purchaser ready, able, and willing to pur-
chase and to bring his principal and such purchaser together.
He was an agent to sell, and his right to compensation was
dependent upon a sale. *Langford v. Issenhuth,* 28 S. Dak.
451, 134 N. W. 889; *Synnott v. Shaughnessy,* 2 Idaho, 111,
7 Pac. 82.

Under the contract it was the defendant's duty to secure
the best possible price for plaintiff's property. The fact
that $20,500 was fixed as the lowest price, that is, as the
price below which the plaintiff would not sell, brings this
case squarely within the exception laid down in *Tasse v.
Kindt,* 145 Wis. 115, 118, 128 N. W. 972:

"If the plaintiff occupied a position which required dili-
gence in obtaining as high a price for the defendant's land
as possible, or if the contract between the parties were such

as to render the contract of the plaintiff with the purchaser at variance with his duty to the defendant [as agent], a very different question would be presented."

This court has been very liberal in permitting an agent representing both parties to recover compensation for services from each, but it must not be inferred that there has been any relaxation of the rule, even as to brokers or middlemen, requiring agents to be loyal to their principal and to act with the utmost good faith. The liability of an agent to his principal arises out of a breach of duty which may fall far short of positive fraud. An agent may not take advantage of the confidential relationship existing between himself and his principal for his own benefit even though the principal is not injured thereby. 2 Mechem, Agency (2d ed.) § 2411; *Sterling E. & C. Co. v. Miller,* 164 Wis. 192, 159 N. W. 732; *Collins v. Case,* 23 Wis. 230; 9 Corp. Jur. 537, § 39; *Bassett v. Rogers,* 165 Mass. 377, 43 N. E. 180.

Even an agent to sell at a fixed price is in duty bound to keep his principal fully informed of all material facts in reference to the transaction, and if an agent knows that more advantageous terms can be obtained he is not only under a moral but a legal obligation to communicate the facts in reference thereto to his principal, and he is liable for his failure so to do. *Snell v. Goodlander,* 90 Minn. 533, 97 N. W. 421; *Carter v. Owens,* 58 Fla. 204, 50 South. 641, 25 L. R. A. N. S. 736. See note and cases cited to *Holmes v. Cathcart* (88 Minn. 213, 92 N. W. 956), 60 L. R. A. 734, and cases cited in 6 L. R. A. Annotations, 688.

The unauthorized contract with reference to the property of the principal made by the agent in this case, whereby he sought to obtain in the execution of his agency a benefit for himself, brings the defendant squarely within the principles above set out and makes him liable to the plaintiff for the amount of the earnest money forfeited by the purchaser.

*By the Court.*—Judgment affirmed.