Middleton Lumber & Fuel Company, Appellant, vs. Kosanke and another, Respondents: Silver Creek Canning Company and another, Garnishee Defendants and Respondents.

*September 11—October 9, 1934.*

The cause was submitted for the appellant on the brief of *Reed & Reed* of Ripon, and for the respondents on that of *Kenneth E. Higby* of Ripon.

FRITZ, J.   The controversy is whether the plaintiff, as a judgment creditor of the defendants Kosanke and Hill, is, by virtue of its garnishee process, entitled to the proceeds of a crop of peas grown, harvested, sold, and delivered, under a written contract, by Kosanke to the defendant, Silver Creek Canning Company, or whether the interpleaded defendant, Washkoska, is entitled to those proceeds, as was held by the trial court.   It appears, from undisputed evidence and some findings of the trial court, which are not questioned by the plaintiff, that during the crop season of 1933 Kosanke operated Hill's farm under a lease giving each of them one-half of the crops or the proceeds thereof; that on March 20, 1933, Kosanke contracted with the defendant Canning Company to grow, harvest, sell, and deliver to it certain peas to be grown on certain acreage of the Hill farm, and that the Canning Company was to pay one-half of the purchase-price, to be computed at rates specified in the contract, on November 1, 1933, and the balance thereof on December 1, 1933; that on May 22, 1933, Kosanke and Hill, to secure indebtedness owing to Washkoska, executed and delivered to him a mortgage on the peas, which had been sown under that contract, and also on certain other growing grains; that that mortgage was duly filed in the office of the register of

deeds on May 31, 1933; that prior to the commencement of these garnishment proceedings on July 11, 1933, the peas had been harvested and delivered by Kosanke to the Canning Company; and that it has paid the exempt proceeds thereof, amounting to $383.75, into court.

In additional findings, which plaintiff contends are without support in the evidence, the court found that at the time of the execution of the mortgage it was understood between the parties thereto, that, in view of the fact that the peas were to be harvested and delivered by Kosanke, to the Canning Company, in accordance with good husbandry and the terms of his contract with the company, Washkoska then consented to the sale of the peas to the Canning Company pursuant to its contract with Kosanke, that the sale and delivery thereof were to be made by Kosanke as agent for the mortgagee, that the proceeds thereof were to belong to the mortgagee, and that when the proceeds thereof were delivered to Kosanke, he would, as agent for the mortgagee, turn them over to him to be applied on the mortgage debt.

An examination of the record discloses that those findings were warranted by Kosanke's testimony, which was received without objection. In the course of his testimony Kosanke said:

"The proceeds were supposed to be paid the mortgagee. . . .

"It was understood they [the Canning Company] were to pay it over to me, the crop being mortgaged, I understood I would of course have turned it right over to him. . . .

"I had a definite agreement he was to get the proceeds of that crop, that is the reason I gave him a chattel mortgage.

"Q. That was the understanding that you had? A. Yes, sir. . . .

"Q. When you gave this chattel mortgage on the pea crop it was understood you were to harvest the pea crop according to agreement with the Canning Company? A. Yes, sir.

"Q. Plant and harvest and deliver it? A. Yes, sir.

"Q. The fund was to be paid you for him? A. Yes, sir. . . .

"*Q.* That is just exactly what was done. The chattel mortgage contemplated a payment of the fund to him rather than the delivery of the chatteled goods? *A.* That is the way I understood it to be.

"*Q.* That is the way he understood it to be? *A.* Yes, sir; that is the way he understood it to be when he took the chattel.

"*Q.* The chattel mortgage was an assignment of that fund or a portion of that fund? *A.* It was."

In view of that uncontradicted testimony we are not warranted in disturbing the finding that Kosanke was to make delivery as agent for the mortgagee; that the proceeds on delivery were to belong to the mortgagee; and that when the proceeds were delivered to Kosanke he, as agent for the mortgagee, was to turn them over to the latter.

The sale and delivery of the crop under those circumstances did not result in the substitution of the mortgagor's personal promise for the mortgage security, or the waiver of the mortgage lien on the mortgaged property and the proceeds thereof. On the contrary, under those circumstances, the chattel mortgage upon the crop under contract of sale operated as an equitable assignment of the proceeds of the sale and when the crop was delivered pursuant to the contract, the title to the proceeds to the extent of the amount secured by mortgage was in the mortgagee. Consequently those proceeds were not subject to garnishment by the mortgagor's creditors. *Black Hawk State Bank v. Accola,* 194 Wis. 29, 215 N. W. 433; *Caroline State Bank v. Andrews,* 204 Wis. 393, 235 N. W. 794; *Carpenter v. Forbes,* 211 Wis. 648, 247 N. W. 857; *Clatworthy v. Ferguson,* 72 Colo. 259, 210 Pac. 693; *Liddle v. Hernandez,* 72 Colo. 585, 212 Pac. 821; *Brug v. Herbst,* 78 Colo. 128, 239 Pac. 868; *Lathrop v. Schlauger,* 113 Neb. 14, 201 N. W. 654.

*By the Court.*—Judgment affirmed.