Donald SELBY and Darrell Selby, d/b/a
Selby's Backhoe and Trencher
Service, Appellees,

v.

KELLY RAE APARTMENTS, INC., a cor-
poration and Ernie Space, d/b/a Ernie's
Plumbing and Heating, Appellants.

No. 53190.

Supreme Court of Oklahoma.

Sept. 22, 1981.

John N. Hermes, Joseph H. Bocock,
McAfee, Taft, Mark, Bond, Rucks & Woo-
druff, Oklahoma City, for appellee, Lincoln
Mortgage Investors.

Robert F. Bourk, Gary W. Gardenhire,
Oklahoma City, for appellant, Trent's Heat-
ing & Air Conditioning, Inc.

DOOLIN, Justice:

This matter comes to us on an abbreviat-
ed record not clarified by factual stipula-
tion.

The facts are complex but for our pur-
poses we know that two separate foreclo-
sure actions are concerned. The same
mortgagee is plaintiff in both actions.
Mortgagor in each action is a separate enti-
ty (Kelly and Villa).[1] Multiple other de-

1. Actually Atherton Development Co. was
mortgagee in the Villa mortgage, but for simpli-

fication we prefer to refer to this action as
Villa.

fendants were named in each action; they include contractors, subcontractors, materialmen, developers, etc. The Kelly mortgage foreclosure was the first action filed with judgment foreclosing mortgagee's (LMI) first mortgage therein in 1974. The Villa foreclosure judgment in favor of LMI was entered in March of 1975.

In the Kelly foreclosure, LMI timely filed a motion for deficiency judgment under 12 O.S.1971 § 686, but no order or journal entry was issued.

In the Villa foreclosure, LMI filed no motion for deficiency judgment and the judgment in foreclosure and sale is final.

Among the defendants in the Kelly foreclosure was a perfected lien materialman, Trent's Heating & Air Conditioning Co., Inc., (Trent). Trent was decreed in the foreclosure judgment to have an inferior lien to LMI's and in the amount of approximately $14,300. Trent's lien was foreclosed by judgment.[2] Trent, realizing there would be no residue after the sheriff's sale, filed an affidavit for garnishment and issued garnishment summons directed to the Oklahoma City Title & Abstract Co. (Garnishee). In due time, garnishee answered indicating it held approximately $7,000 in its escrow account arising out of transactions in the Villa foreclosure.[3] Garnishee stated in its answer the funds were claimed by LMI and other defendants in the Villa foreclosure.

At a hearing in the garnishment proceedings in the Kelley foreclosure action, the court stayed distribution of the funds garnished until the conclusion or judgment in

2. Trent, by supplemental journal entry filed February 1974, reduced its judgment to a sum certain.

3. The determination that the funds were generated in Villa was established at a show-cause hearing in the Kelley garnishment foreclosure. Garnishment summons had issued not only to Kelley but Consolidated Contractors, a common party to both the Kelley and Villa foreclosures.

4. 12 O.S.1971 § 686 provides in pertinent part:
"In actions to enforce a mortgage ... a judgment ... shall be rendered for amount or amounts due to plaintiff ... with interest thereon and for sale of property charged ...

foreclosure was forthcoming in the Villa foreclosure.

The Villa foreclosure judgment (March 1975) ordered payment of the garnished funds to LMI although they were held in the Kelley foreclosure action. The Kelley court also ordered payment of the garnished funds to be made to LMI in December 1978. The judgment of March 1975 treated the garnished funds as "proceeds of sale" and ordered them paid to LMI. No payment was made, however, until the order of December 1978 in the Kelley action.

Trent filed timely appeal from the December 1978 order of distribution by the Kelley court with the Supreme Court in January of 1979. The case was assigned to the Court of Appeals, Division 2, which reversed the trial court and ordered judgment for garnished fund in favor of Trent. We granted certiorari to the Court of Appeals on May 4, 1981, under 12 O.S.Supp. 1980 Ch. 15, App. 3, Rule 3.13A.

On certiorari, LMI claims the escrowed funds first as proceeds of sale under 12 O.S.1971 § 686 (§ 686).[4]

■ We hold that the escrowed sum advanced by the mortgagee to a party or agent for payment of materialmen, contractors, laborers, etc., is not a part of the "proceeds of sale" resulting from sheriff's sale of mortgaged premises.

■ Section 686 when speaking of "proceeds of sale" means just that. Black's Law Dictionary, Fifth Edition, p. 1084, defines "proceeds" as follows:

> Notwithstanding the above provisions no judgment remaining unsatisfied shall be enforced for any residue of the debt remaining unsatisfied ... after the mortgaged property shall have been sold except as herein provided. Simultaneously with making of a motion for order confirming sale or in any event within 90 days after sale, the party to whom such residue shall be owing may make a motion ... to enter deficiency judgment ... If no motion for a deficiency judgment shall be made as prescribed the proceeds of sale, regardless of amount, shall be deemed to be full satisfaction of the mortgage debt and no right to recover any deficiency in any action or proceedings shall exist." (Emphasis ours.)

Issues; income; yield; receipts; produce; money or articles or other things of value arising or obtained by the sale of property; the sum, amount, or value of property sold or converted into money or into other property. Proceeds does not necessarily mean only cash or money. *Phelps v. Harris*, 101 U.S. 370, 25 L.Ed. 855. That which results, proceeds, or accrues from some possession or transaction. *State Highway Commission v. Spainhower*, Mo., 504 S.W.2d 121, 125. The funds received from disposition of assets or from the issue of securities.

.    .    .    .    .

There was in this case no notice of sale of escrowed funds, i. e., the notice failed to make any mention of such personalty. There was no notice of sale of chattels under the Uniform Commercial Code with a right to the accruals, yield, or earnings, therefrom such as advanced in *Doughboy Investment, Inc. v. Turkwood, Inc.,* 281 Minn. 140, 160 N.W.2d 713 (1968). Although the escrow agreement is not a part of the record, it is presumed that if the building project had gone smoothly any funds remaining would have been the property of the developer or contractor, not LMI.

Since the escrowed funds were not part of the security, *res*, or items sold, we hold LMI could reach same only by deficiency judgment and general execution.

We have alluded to the fact that in the Villa foreclosure no motion for deficiency judgment was made. We note in the Kelley proceeding a motion for deficiency was timely made but no order or journal entry entered thereon.

It is true that § 686, in speaking of deficiency procedures, provides or speaks of filing a motion for deficiency:

> . . . the party to whom such residue shall be owing *may make a motion* in the action *for leave to enter deficiency judgment* . . . against whom such judgment is

sought . . . *If no motion* for a deficiency judgment shall be made, the proceeds of sale regardless of the amount shall be deemed to be full satisfaction of the mortgage debt and no right to recover any deficiency in any action or proceedings shall exist. (Emphasis supplied.)

Section 686 also provides:

> . . . upon such motion . . . the court shall determine . . . as it shall direct, the fair and reasonable market value of the mortgaged premises . . . and shall make an order directing the entry of deficiency judgment . . . . (Emphasis supplied.)

Granted, the statute does not in black and white, *ipso facto*, state an order or journal entry is the basis of deficiency or is a requirement therefore. The statute does, however, indicate to us the motion is "for leave to *enter* deficiency judgment."

The statute likewise provides that an order as to market value shall be directed by the court and order entry of deficiency judgment.

Title 12 O.S.1971 § 1110 reinforces the argument that a motion alone is not sufficient. That section defines a motion thus:

> A motion is an application *for an order* addressed to the court or judge . . . by any party to a suit or proceeding or anyone interested . . .

■ We therefore hold filing a motion for deficiency does not by itself entitle a lien creditor to deficiency under § 686; to perfect such right to deficiency an order must follow. Not only must a creditor give notice and the court determine value, but an order must issue as made and provided in § 686.

An order of sale in a mortgage foreclosure is a form of special execution, 12 O.S. 1971 § 732.[5] Trent in this case commenced its garnishment after reducing its lien to a money judgment, a sum certain.[6] In *Paschal*,[7] we said:

---

5. *Price v. Citizens' State Bank*, 23 Okl. 723, 102 P. 800 (1909); *Paschal Investment Co. v. Atwater*, 174 Okl. 356, 50 P.2d 357 (1935) and *Johnson v. Taylor*, 68 Okl. 229, 173 P. 1039 (1918).

6. No attack on the validity of a money judgment of Trent is argued; we consider it admittedly valid and satisfiable by general execution.

7. *Paschal v. Atwater*, Footnote 5, supra.

The mortgagee must first issue a special execution, and the property must be sold and the proceeds applied on the judgment, and if the amount of the sale is insufficient to satisfy the judgment, then the mortgagee is entitled to issue a general execution against the defendant for the deficiency.

A defendant who secures a personal money judgment against a codefendant where no lien on specific real or personal property is involved is entitled to a general execution against the property of the codefendant judgment debtor.

At page 359 we observed:

"Clearly plaintiff is not entitled to a general execution until its deficiency judgment is determined, and it cannot be determined until after the property is sold on special execution and plaintiff is not entitled to general execution until it has first complied with § 505 O.S.1931 (12 O.S.1971 § 903.)

Not only did LMI fail to perfect its right to deficiency but Trent was entitled to priority, "in accordance with the time proceedings were instituted."[8] See also 12 O.S. 1971 § 737.

In summation and at the risk of repetition, we hold that the escrow funds held by the garnishee are not "proceeds of sale" under § 686. Such funds can therefore be reached by special execution followed by general execution. It follows since LMI executed against mortgagor's property by special execution and did not obtain an order granting deficiency, its judgment is satisfied by sale under § 686, supra.

Trent is entitled to the escrowed funds as between these claimants.

LMI argues that the record supports only its right to the escrowed funds and suggests Trent failed to object to dispersal of the funds as proceeds in Villa and approved

such a court order therefore. We are not impressed. We believe our holding that the funds are not proceeds of sale and that LMI's judgment was satisfied by its failure to perfect an order for deficiency judgment properly, has disposed of this argument. LMI had no priority over Trent to the escrowed funds under any theory.

Reversed with directions to enter judgment for Trent in the sum of $6,978.23, costs, interest from date of trial court's judgment of disbursal together with attorney fees under 12 O.S.Supp.1978 § 1190(C)[9] if in the trial court's discretion same be due and owing.

OPINION OF COURT OF APPEALS VACATED; REVERSED; CAUSE REMANDED WITH DIRECTIONS.

BARNES, V. C. J., and HODGES, LAVENDER, SIMMS, HARGRAVE and OPALA, JJ., concur.

---

**8.** *Oklahoma Tool & Supply Co. v. Drumright State Bank*, 97 Okl. 165, 222 P. 975 (1924) and *Barton v. Spencer*, 3 Okl. 270, 41 P. 605 (1895).

**9.** 12 O.S.Supp.1978 § 1190(C) provides:

"In all other cases under this article, not expressly provided for, the court may award

costs in favor of or against any party, in its discretion. When there is no issue for trial, and any liability on the part of the garnishee is disclosed, the costs of the garnishment proceedings shall be taxed for the plaintiff, if he recovers as disbursements in the principal action."