Denis, Appellant, vs. Nu-Way Puncture Cure Company, Respondent.

*November 6—December 2, 1919.*

*Corporations: Payment of promotion expenses by commission from sale of stock: Liability for fraud of company and stock salesman: Question for jury: Knowledge of efficiency of product: Remedies by rescission or action for damages: Evidence: Affirmance of sale: Adjustment with agent not a bar to action: Sales: Necessity of knowledge of falsity of representations.*

1. Although under sec. 1753, Stats., a corporation cannot issue its stock for any sum less than the par value thereof, it can pay promotion expenses incident to and necessarily incurred in the sale of the stock, and may compensate one who sells its stock by means of a contract to pay commissions of twenty-five per cent. of the amount sold.

2. If representations inducing a sale were material and false, and the maker knew or should have known that they were false, or made them recklessly without knowledge, and the injured party relied on them as true without present means of knowledge of their falsity, and suffered damage, he was defrauded in the legal sense.

3. In an action to recover the purchase price of corporate stock upon rescission of the contract of purchase for fraud and deceit, the question whether those interested in the corporation should have known that the product to be manufactured was inefficient for the purposes claimed is, under the evidence, for the jury.

4. If a stockholder was defrauded in the sale of stock to him by the president of the company acting as its selling agent for commission, the president and the company were both jointly and severally liable to him.

5. One who was induced to purchase stock in a corporation through the false representations of its president, the company's agent to sell stock, had the right either to restore the original status, rescind the contract of purchase and recover back his money, or could offer to restore the stock, and, by keeping the offer good, sue in equity for rescission of the contract and recovery of his money, or could sue the president or the company, or both, at law for damages resulting from the president's fraud.

6. The question whether a subsequent transaction, whereby the president agreed to take back the stock from the purchaser, was a sale of the stock to him inconsistent with rescission of the contract of purchase, or was a mere adjustment of the purchaser's claim for fraud, is for the jury.

7. Where a company's agent to sell its stock committed a fraud, the purchaser can recover the price of the stock on rescission for the fraud, despite his prior efforts to secure redress from the agent, who actually committed the fraud, his claim against the company being extinguished only so far as the agent had reimbursed him, unless the transaction with the agent amounted to a resale of the stock to the agent and an assertion of ownership and affirmance by the purchaser.

8. On rescission of the contract of purchase for fraud and deceit, the purchaser should have been permitted to show that the defendant company had gone out of existence and was not doing business, the evidence having a bearing on the questions whether the company's product was meritorious and whether the purchaser sustained any injury from the misrepresentations made to him.

APPEAL from a judgment of the circuit court for Brown county: HENRY GRAASS, Circuit Judge. *Reversed.*

Action by a stockholder to recover the purchase price of corporate stock purchased from the defendant corporation, upon rescission of the contract of purchase because of fraud

and deceit. The *Nu-Way Puncture Cure Company* is a corporation organized under the laws of the state of Wisconsin, with an authorized capital stock of $20,000. It was the owner of an alleged secret formula for a preparation which it was claimed would immediately heal or cure all punctures in automobile tires when placed in the inner tubes thereof. This so-called secret formula was neither patented nor registered. It was purchased from one Moore, who was president of the company, to whom $15,000 of the stock of the company was issued therefor. Moore, the president, was appointed the fiscal agent of the company for the disposition of its stock, and by the terms of his employment he was to receive twenty-five per cent. of the value of the stock sold. Whenever he sold stock he kept twenty-five per cent. of the purchase price thereof and accounted to the corporation for the remaining seventy-five per cent. The plaintiff purchased twenty shares of the stock of the company, paying $200 therefor. He purchased the stock from Moore. Moore represented to him that if such product manufactured from said secret formula was placed in the inner tubes of automobile tires it would not damage them, but that it would instantly close and seal any and all punctures, holes, and injuries that such tubes customarily or usually received; that no one else could use such cure, and that none other of a similar kind, make, or purpose was known or in existence; that the defendant alone had the right to manufacture such cure; that said company had derived and would derive very large profits from the manufacture thereof, and without competition from any other similar manufacture or product. An inflated inner tube, filled with this material, was on display in the office of the company. Under such circumstances, a puncture thereof would be immediately filled by the material placed therein, and the tube would not be deflated by reason of the puncture. Subsequent actual and practical use of this material quickly demonstrated that it was a complete failure, for

two reasons: first, its presence in the inner tube rotted and destroyed it; second, when the weight of an automobile was superimposed on the tire such weight forced the material through the puncture and it failed to seal or close the opening, as it would unquestionably do in the absence of any weight imposed upon the tube. The company could not sell its product, and quickly went out of business.

Upon discovery by the plaintiff that the product was a failure and that the representations made to him were untrue, he tendered back his stock and demanded a return of his money. He made this demand of Moore, the person from whom and through whom he purchased his stock. Moore agreed to take the stock back and to return to him the $200 paid therefor. He paid $15 down, and at the time of the trial had paid $50 altogether. His agreement to take the stock back is in writing, and is as follows:

"May 12, 1917.

"I hereby agree to take the certificate of *Joseph F. Denis, Sr.,* being No. 79 and No. 80, for ten (10) shares each in the *Nu-Way Puncture Cure Company* and to pay therefor two hundred ($200) dollars on or before May 21, 1917.

"R. C. Moore."

As collateral security for the $200, Moore deposited with the plaintiff a certificate for forty-one shares of the stock of said company.

The case was tried before the court and a jury. At the conclusion of the testimony the court directed a verdict in favor of the defendant, upon the express ground that the transaction between plaintiff and Moore by which Moore agreed to pay plaintiff the $200 was not a rescission of the contract of purchase but a sale of the stock; that after having acquired knowledge of the fraud, the transaction with Moore operated as an election on the part of the plaintiff to affirm the contract of purchase and keep the stock. A judgment was entered in favor of the defendant dismissing

plaintiff's complaint, and from the judgment so entered plaintiff brings this appeal.

*Sol. P. Huntington* of Green Bay, for the appellant.

For the respondent there was a brief by *Kittell & Jaseph* of Green Bay, and oral argument by *Lynn D. Jaseph*.

OWEN, J. This is an action to recover the purchase money upon the rescission of a contract for the purchase of capital stock in the defendant company, it being claimed that the purchase was induced by false and fraudulent representations on the part of the company. The court directed a verdict in favor of the defendant upon the ground that the plaintiff had not rescinded nor offered to rescind, and that his transactions with Moore, the president of the company, amounted to a resale of the stock and were inconsistent with a rescission of the contract of purchase. The question of whether a case of fraud was proved entitling plaintiff to recover was not passed upon by the trial court. It is urged on the part of the respondent that, whether the court was or was not right in directing a verdict upon the grounds specified, the verdict nevertheless was properly directed because actionable fraud was not proven. Before proceeding to a consideration of the grounds assigned by the court for its action it is proper to consider whether, in any event, the record discloses a jury question.

The plaintiff claims fraud because, first, the stock of the corporation was sold for less than par, in violation of the provisions of sec. 1753, Stats., which provides:

"No corporation shall issue any stock or certificate of stock except in consideration of money or of labor or property estimated at its true money value, actually received by it, equal to the par value thereof, nor any bonds or other evidences of indebtedness except for money or for labor or property estimated at its true money value, actually received by it, equal to seventy-five per cent. of the par value thereof, and all stocks and bonds issued contrary to the provisions of

law and all fictitious increase of the capital stock of any corporation shall be void."

His contention is that, by reason of the payment to Moore of the twenty-five per cent. commission for the sale of the stock, which was retained by him, the par value of the stock was not paid into the corporation, and that this operated as a fraud upon the subsequent purchasers of stock. While the statute requires that the full par value of stock shall be paid into the company, a corporation is not prohibited from expending money necessary for its promotion and for the sale of its stock. While a corporation cannot issue stock for any sum less than the par value thereof, it can pay expenses incident to and necessarily incurred in the sale thereof. If it deems a commission contract, such as the one given to Moore, wise and provident, no reason is perceived why it cannot compensate one who sells its stock in this manner as well as in any other. We do not think this ground of fraud can be sustained.

As to the alleged fraudulent representations concerning the virtues of the product which this corporation was organized to manufacture and sell, it may be stated that it appears without dispute that the representations as alleged in the complaint were made to the plaintiff, and that subsequent practical use of the product proved that it was entirely worthless and a complete failure. It is claimed, however, that the officers of the company believed that the product was meritorious and that it would accomplish all claimed for it, and that the representations were made in the best of faith and in the entire absence of any fraudulent purpose. The question, therefore, comes to this: It appearing from the evidence that the merits and efficiency of the product were misrepresented to the plaintiff, can it be said as a matter of law that such misrepresentations were not actionable because those making them believed the product to be as represented? In this state the rule is that

"If the representations were material and false, and the

maker thereof either knew or ought to have known that they were false, or if he made them recklessly, with no knowledge on the subject, and the injured party relied upon them as true, without the present means of knowledge of their falsity, and suffered damage thereby, then the fraud is complete." *Krause v. Busacker,* 105 Wis. 350 (81 N. W. 406), at p. 354; *First Nat. Bank v. Hackett,* 159 Wis. 113, 149 N. W. 703.

It will thus be seen that knowledge of the falsity of representations on the part of those making them is not essential. It is sufficient if those making them ought to have known they were false.

The jury might well have found from the evidence that those interested in the company should have known that the product was inefficient for the purposes claimed. One of the witnesses, who was the proprietor of a taxicab business operating seven automobiles, testified that he was solicited to purchase stock in the company; that before doing so he tested the product and found that while it might seal a puncture in an inner tube, blown up for the purpose of testing, it also rotted the tube at the point of puncture within a very short time, from which he concluded that use of the preparation was not desirable and declined to buy any stock. Other witnesses testified to its failure to do the work claimed for it in case of punctures of tires while in actual use upon automobiles. The jury might therefore very well conclude that, if the failure of the product was so easily demonstrable, those in charge of the company's affairs should have known it, and that what prospective purchasers of stock could so easily prove for themselves should have been known by the officers of the company. In our opinion, this phase of the case was clearly a jury question.

We come now to consider whether the court was right in directing the verdict on the ground that the action of plaintiff in dealing with Moore amounted to a resale of the stock and was inconsistent with a rescission of the contract of purchase. We could readily agree with this conclusion if

he had made a sale of the stock to a third party, one not
connected with the company nor with the original contract
of purchase.    In such a case the resale of the stock would
evidence a claim of ownership and indicate an affirmation
rather than a rescission of the original contract of purchase.
But is that the case here?    If plaintiff had been defrauded,
Moore and the company were both jointly and severally
liable to him.    *Heckendorn v. Romadka,* 138 Wis. 416, 120
N. W. 257.    The plaintiff had open to him one of several
courses to remedy the wrong: He had the right to restore
the original situation, rescind the contract and recover back
his money.    He could offer to restore, and, by keeping such
offer good, could sue in equity for a rescission of the con-
tract and for a recovery of his money; or he could have sued
Moore, or the company, or both of them, at law for the
damages resulting from the fraud.    *Ibid.*    Upon discover-
ing that he had been defrauded he went to Moore for the
purpose of securing redress for the fraud.    It is true that
he first went to the secretary of the company, but was re-
ferred by the secretary to Moore.    Moore, it will be borne
in mind, was the person who represented the company in
making the sale of the stock to the plaintiff, and it was quite
natural and proper that the secretary should refer plaintiff
to Moore, if, indeed, any significance attaches to the inci-
dent at all.    It is quite apparent from plaintiff's testimony
that his purpose in going to Moore was to secure restitution
and not for the purpose of making a resale of the stock,
and, as we view it, the written memorandum given plaintiff
by Moore in which he agreed to "take" his stock, is just as
consistent, if indeed not more so, with a rescission of the
contract of purchase or an adjustment of plaintiff's claim
or grievance as it is with the idea that plaintiff was making
a sale of his stock to Moore.    Plainly his object in negotiat-
ing with Moore was to secure restitution of the money paid
for the stock.    To secure this he was willing to surrender
his stock.    Moore agreed to pay back his money and take

his stock. Under the circumstances we do not think the trial court was justified in holding as a matter of law that the transaction with Moore constituted a sale of the stock. At the least, it was for the jury to say whether the transaction was a sale of the stock to Moore or an adjustment of the claim for fraud.

If it was not a sale, no reason is perceived why this action may not be maintained against the company. Both Moore and the company were liable. His efforts to secure redress from Moore in no manner affected the liability of the company. His claim against the company is extinguished in so far as Moore has reimbursed him, and no farther. For the balance the company is still liable, unless of course the jury should find that the transaction with Moore amounted to a sale of the stock and an assertion of ownership on the part of the plaintiff. It follows that the court was in error in directing the verdict, and that the case should have been submitted to the jury.

Error is also assigned because the court refused to permit plaintiff to show that the company had gone out of existence and was not now doing business. Inasmuch as there must be a new trial, we deem it proper to briefly consider this alleged error. It seems to us that this evidence has a bearing upon the question of whether the product proved to be a meritorious one and came up to the representations made concerning it. It also has a direct bearing upon the question of whether plaintiff sustained any injury as a result of the misrepresentation, an element which must be proved to maintain his action. We think the evidence should have been admitted.

Other errors assigned by the plaintiff have been considered. None of them, except as herein discussed, appear to be well grounded, and are not of sufficient importance to justify separate treatment here.

*By the Court.*—Judgment reversed, and cause remanded for a new trial.