RESTLAWN MEMORIAL PARK · ASSOCIATION, Appellant, vs. SOLIE, Respondent.

*December 7, 1939—January 16, 1940.*

426

For the appellant there were briefs by *Benton, Bosser, Becker & Parnell,* attorneys, and *David L. Fulton* of counsel, all of Appleton, and oral argument by *Mr. Fulton* and *Mr. Homer H. Benton.*

For the respondent there was a brief by *Bird, Smith, Okoneski & Puchner* of Wausau, and oral argument by *Charles F. Smith.*

NELSON, J. The principal facts were stipulated. The facts not stipulated presented no material dispute. The plaintiff, at all times to be mentioned, owned and operated a cemetery in or near to the city of Wausau. Its authorized capital stock was two hundred fifty shares of the par value of $100. In 1930 the defendant purchased from the plaintiff ten shares of its stock for $1,000. Later on he was elected to the plaintiff's board of directors. By December of 1930 the plaintiff's financial condition was poor. At a directors' meeting, held December 1, 1930, attended by all of the directors, the following motion was passed:

"Moved and supported that A. E. Solie be authorized to sell $5,000 worth of company stock with commission up to 15%."

A stockholders' meeting was held on January 18, 1932. In the minutes of that meeting the plaintiff's financial obliga-

tions were enumerated. The directors were authorized to "devise ways and means if possible to include sales of stock at such prices as may be obtained to procure necessary funds to discharge the aforesaid obligations."

The defendant, pursuant to the motion adopted December 1, 1930, attempted to sell stock to several residents of Wausau but without success. On August 31, 1932, he purchased from the plaintiff, thirty-eight shares of its stock. He paid the plaintiff $3,230 in cash and received a credit on the plaintiff's books for $570 as his fifteen per cent commission. On December 31, 1934, the defendant purchased sixteen additional shares from the plaintiff for which he paid $1,360 in cash and was credited on the plaintiff's books with $240 as his commission. On February 23, 1935, a Mr. Hoppe and a Mr. Dettmann purchased from the defendant and from Mr. Corbeille, then president of the company, one hundred shares of stock at an average price of $62 per share, which gave to them the control of the company. Thereafter, differences arose between Mr. Hoppe and Mr. Dettmann on the one hand, and the defendant on the other, as a consequence of which the defendant was not re-elected a director in 1936. The action against the defendant was authorized by the directors on May 11, 1936.

Two questions are presented for determination on this appeal: (1) Was it lawful for the plaintiff to authorize the payment of a fifteen per cent commission on the sale of its stock? (2) Was it lawful for the plaintiff to credit the defendant with the fifteen per cent commissions on stock purchased by him?

The plaintiff contends that the sale of the stock to the defendant amounted to a sale below par and consequently was violative of the provisions of sec. 182.06, Stats. 1931, which, in part, provided:

"No corporation shall issue any stock other than dividend stock, except in consideration of money or of labor or prop-

erty estimated at its true money value, actually received by it, equal to the par value thereof."

That section was construed in *Whitewater T. & P. B. Mfg. Co. v. Baker,* 142 Wis. 420, 125 N. W. 984, and *Whitewater T. & P. B. Mfg. Co. v. Johnson,* 171 Wis. 82, 175 N. W. 786. In those cases no commission was involved, and it appeared that all of the original stockholders purchased stock in the company for five eighths of its par value. The defendant contends that the stock transactions between him and the plaintiff in no way violated the provisions of sec. 182.06, Stats., *supra,* and that the company had a right to pay a commission on the sale of its stock, as held in *Denis v. Nu-Way P. C. Co.* 170 Wis. 333, 338, 175 N. W. 95. It was claimed by the plaintiff in that case that the payment of a commission of twenty-five per cent to an officer of the company on a sale of treasury stock to the plaintiff amounted to a fraud upon the latter, which justified him in rescinding the sale. This court, speaking through Mr. Justice OWEN, said:

"His contention is that, by reason of the payment to Moore of the twenty-five per cent commission for the sale of the stock, which was retained by him, the par value of the stock was not paid into the corporation, and that this operated as a fraud upon the subsequent purchasers of stock. While the statute requires that the full par value of the stock shall be paid into the company, a corporation is not prohibited from expending money necessary for its promotion and for the sale of its stock. While a corporation cannot issue stock for any sum less than the par value thereof, it can pay expenses incident to and necessarily incurred in the sale thereof. If it deems a commission contract, such as the one given to Moore, wise and provident, no reason is perceived why it cannot compensate one who sells its stock in this manner as well as in any other. We do not think this ground of fraud can be sustained."

The court, while considering sec. 1753, now sec. 182.06, Stats., clearly held that that section was not violated by a

corporation when it expended money necessary for promoting the sale of its stock, and that no reason was perceived why a corporation could not so compensate one, even an officer, who sold its stock.

The plaintiff attempts to distinguish *Denis v. Nu-Way P. C. Co., supra,* on the ground that in that case a commission was paid to an officer for selling stock to another, and contends that while the law stated in *Denis v. Nu-Way P. C. Co., supra,* may be good law as applied to the facts of that case it is not applicable to a situation where an officer of a company, who is authorized to act as the agent in the sale of its stock, himself purchases such stock at the price authorized, because no labor can be involved. At a very early date this court stated the law applicable to a situation where an agent authorized to sell property on commission, himself purchased the property. In *Grant v. Hardy,* 33 Wis. 668, 673, 674, it was said:

"But since that case [*Hardy v. Stonebraker,* 31 Wis. 640] was decided, we have had occasion to consider the question, whether, when a broker merely engages to find a purchaser at such a price as may be agreed upon, and becomes the purchaser himself—the vendor, with full knowledge of its character treating with him as a purchaser and a sale being consummated—whether, upon these facts, the commissions can be recovered. And it was held that there was nothing in the policy of the law which would forbid a recovery in such case, and that the action could be maintained, providing the proof was clear and satisfactory that the broker or agent became the purchaser under the agreement to pay the commission, and with an understanding to that effect on the part of the vendor when the sale was made." *Stewart v. Mather,* 32 Wis. 344.

The rule there stated is in accord with the general rule. In 9 C. J. p. 539, § 39, it is said:

"But where the broker openly and fairly buys the property, or is interested as one of the purchasers, at a price fixed by the principal with full knowledge that the broker is one

of the purchasers, the transaction is generally held valid."
See also 12 C. J. S. p. 104, § 42.

In 8 Am. Jur. p. 1039, § 91, it is stated:

"The general rule is that a broker can neither purchase from, nor sell to, his principal unless the latter expressly assents thereto or, with full knowledge of all the facts and circumstances, acquiesces in such a course."

It is undisputed that the plaintiff was very desirous of selling some of its treasury stock in order that its financial condition might be improved and its bankruptcy averted; that the defendant attempted to sell stock to others without success; that he purchased the stock with the full knowledge of the company, its officers and stockholders, and that he paid therefor eighty-five per cent of the par value thereof in cash, and was credited on each purchase with a fifteen per cent commission. This is not a case involving a secret purchase by the agent or broker from his principal or employer. There is nothing in the record which suggests that the defendant took any unfair advantage of the plaintiff or which in the slightest manner reflects upon the defendant's integrity. The stock transactions were entered into with full knowledge and complete understanding on the part of the company and its officers. We perceive no reason why the stock transactions as carried out should be condemned, or why, under the circumstances, it was not proper for the plaintiff to give the defendant credit for the commissions to which, concededly, he would have been entitled had he sold the stock to others.

One other question should perhaps be considered briefly. The parties stipulated that the plaintiff at none of the times mentioned had a permit from the securities division of this state to sell the stock in question. The trial court gave some consideration to that fact, and held that although the sales of stock by the plaintiff were in violation of the Securities Law because no permit to sell its stock had been obtained by the plaintiff, neither the plaintiff nor the defendant was in a

position to complain of such violation because both parties had participated in said transactions with full knowledge of the facts and because no damage to the plaintiff had resulted. Assuming, as we must, that the plaintiff was not authorized to sell its stock without a permit since the commissions paid on the sale of its stock exceeded two per cent of the selling price (sec. 189.03 (15), Stats. 1931), and assuming that the sale of such stock was in violation of the provisions of ch. 189, Stats., the sales were not void but voidable only at the election of the purchaser. Sec. 189.22, Stats. 1931. Since the defendant, with full knowledge of the facts, did not, within three months after he had knowledge that such security was sold without a permit, attempt to avoid his purchases, we do not perceive that the failure of the plaintiff to obtain a permit has any bearing upon the questions here considered.

*By the Court.*—Judgment affirmed.