FRIEND vs. YAHR, Appellant, and BOWES and another, Executors, Respondents.

FRIEND, Appellant, vs. WARD and others, Respondents.

*October 4—December 12, 1905.*

(1–3) *Alteration of instruments:·Filling blanks after delivery: Reexecution.* (4–12) *Mortgages: Payment: Satisfaction: Validity of assignments:* Bona fides: *Reliance upon record: Payments to agent: Validity: Misappropriation of moneys by agent.*

1. A person having executed an instrument, leaving blank spaces therein to be filled, and delivered the same in such imperfect condition to another for use, the presumption is, nothing appearing to the contrary, that such person intended to confer upon such other authority to complete the instrument.
2. The rule above stated applies to instruments required by law to be executed under seal and to be witnessed and acknowledged in order to entitle the same to be recorded, as well as to simple contracts.

3. In case of implied authority, in the circumstances stated in the foregoing propositions, being performed the instrument does not require re-execution or acknowledgment to give it full validity.

4. Payment of an indebtedness on a note secured by a mortgage on real estate extinguishes the mortgage lien without any satisfaction thereof of record or in writing.

5. A mortgage having been extinguished by payment of the indebtedness, it is not necessary to valid record evidence thereof that a satisfaction piece shall be executed by the actual or apparent owner of such indebtedness for delivery to the mortgagor, or that there should be such delivery.

6. If a person, acting for himself or another, for value acquires a promissory note before maturity, secured by a mortgage upon real estate, taking the title to such mortgage in the name of another by his consent, evinced by a general power of attorney, but without his knowledge as to the particular transaction, and thereafter such other by consent of such third person, evinced by such power of attorney, but without his knowledge as to the particular transaction, assigns his security in writing to a fourth person, the assignment being neither witnessed nor acknowledged, the *bona fides* of the transaction as to the latter or as to such first person is not affected by the mere use of the third person's name as assignee and subsequently as assignor, nor by the fact that he was not pecuniarily interested in the transaction, nor by the circumstance that the second instrument of assignment was not so executed as to be entitled to record.

7. In the circumstances above stated the final holder of the legal title to the security can rely on the *bona fides* of the transaction between the vendor and the person dealing with him in the first transaction.

8. A person in dealing with another in respect to real estate may rely upon the record title to the property in the absence of actual knowledge of the title in fact, or of facts sufficient to put him on inquiry in respect thereto.

9. A person in taking a mortgage on real estate may rely on the record of a satisfaction by the record owner of a prior mortgage on the same property in the absence of knowledge, actual or constructive, of the ownership of such prior mortgage by some other person than such owner.

10. The record of a mortgage affords constructive notice only of its existence and ownership thereof by the mortgagee named therein, not of the assignment of such mortgage to another.

11. A person in possession of a note belonging to another, secured by a mortgage upon real estate, with authority to collect the same

Friend v. Yahr, 126 Wis. 291.

cannot rightfully accept in payment anything but money. Nevertheless if such person takes from the mortgagor a new mortgage on the real estate covered by the first mortgage for the purpose of providing means with which to pay off the latter, and thereafter by the use of such second mortgage he acquires such means before his agency to collect is terminated, such authority is thereby executed and the first mortgage indebtedness and lien extinguished.

12. If a person intrusted with authority to collect a mortgage indebtedness enters upon the execution of such authority and continues efforts in that regard until he obtains the necessary money therefor, nothing appearing to the contrary, the agency to collect and possession of the securities by the agent is to be presumed to continue correspondingly, and the legal effect of obtaining the money is the extinguishment of the note and mortgage, regardless of whether such money in due course, or otherwise, reaches the rightful owner.

[Syllabus by MARSHALL, J.]

APPEALS from a judgment of the circuit court for Milwaukee county: ORREN T. WILLIAMS, Circuit Judge. *Reversed.*

Action to foreclose a mortgage. The complaint was in the usual form. Defendants *Thomas H. Bowes* and *Mary Kurtz,* as executors of the last will of James Lawrie, deceased, pleaded ownership of a note for $1,600, secured by a mortgage on the premises described in the complaint, given to their testator in his lifetime by defendants *Francis Ward* and *Alice Ward,* the makers of plaintiff's mortgage, and that the said mortgage was paramount to that of the plaintiff. They ask for appropriate relief. Defendants *Francis Ward* and his wife *Alice Ward* pleaded extinguishment of the Lawrie mortgage by payment of the indebtedness secured thereby to Henry Herman, as agent for Lawrie in his lifetime. Defendant *Yahr* pleaded ownership of a $600 note made by said *Francis Ward,* secured by a mortgage on the premises described in the complaint, executed by said *Francis Ward* and his wife, and that the same was paramount to the Lawrie mortgage. The facts established by the evidence as found by the trial court, so far as necessary to be stated, are these:

On December 12, 1893, defendants *Francis Ward* and *Alice Ward* mortgaged the real estate described in the complaint to Henry Herman to secure payment in five years of *Francis Ward's* note for $1,600 and interest thereon at the rate of seven per cent. per annum, payable semiannually. The mortgage was duly recorded December 16, 1893. January 10, 1894, Herman, for value, in writing assigned the mortgage and indebtedness secured thereby to James Lawrie. The assignment was not recorded till April 23, 1903. The failure in that regard was in accordance with a then existing custom. Interest on said note was duly paid to Lawrie or his agent until 1898. In October, 1902, Lawrie delivered the mortgage, note, and assignment to Henry Herman with instructions to collect. Herman delivered the same to an attorney with instructions to commence foreclosure proceedings but not to file any papers. The attorney did as directed, Lawrie verifying the complaint, and service thereof being duly made in the action. No papers in such action were filed. No bill for legal services was rendered to Lawrie, nor was the latter notified of the termination of the action, which thereafter occurred.

On November 14, 1902, by previous arrangement, *Alice Ward, Ferdinand T. Yahr,* and Henry Herman met at the latter's office. Neither Lawrie nor his attorney knew of such meeting. The amount due on the mortgage indebtedness for interest and unpaid taxes was then determined. An outstanding mortgage for $300 on the premises in question to a corporation represented by *Yahr* was satisfied, a new note for $1,600, payable in five years with interest at five per cent. per annum, was prepared and a mortgage on such premises to secure the same was signed by *Alice Ward.* Later in the day the mortgage and note were signed by *Francis Ward,* and the mortgage was duly witnessed and acknowledged so as to be entitled to record. At this time the *Wards* were assured that a release of the Lawrie mortgage was ready for delivery and

would be recorded with the new mortgage. No release was in fact ready for delivery. The mortgage was duly recorded the next day after its execution. At the time of making the second $1,600 mortgage the *Wards* gave a note for $600, due in five years thereafter with five per cent. interest per annum, to defendant *Yahr,* and mortgaged the premises in question to secure payment thereof, the same to be subject to the $1,600 mortgage. The consideration for the *Yahr* mortgage was the satisfaction of the $300 mortgage and a loan of $300. At the same time the *Wards* further mortgaged the premises to Herman to secure payment of *Francis Ward's* note for $600 given to Herman, which by its terms drew interest at the rate of five per cent. per annum and was payable in five years. Thereafter such note and mortgage were duly assigned to defendant *Vedder,* who is now the owner thereof. That note was due at the time of the commencement of this action. By agreement with defendant *Yahr* his mortgage was made subject to the *Vedder* mortgage.

At the time of the transactions of November 14, 1902, *Yahr* had actual notice that Lawrie was the assignee of Herman of the first $1,600 mortgage, and *Vedder* had constructive notice of such fact. Herman, from the time he transferred the mortgage to Lawrie till he left the country in 1903, knew that the mortgage indebtedness had not been paid and that Lawrie had never released his mortgage. As a result of negotiations between Herman and Charles Friend, plaintiff's son and attorney, between the date of the second $1,600 mortgage and the 24th day of November thereafter, the former transferred such mortgage and the indebtedness secured thereby, delivering the papers to said Friend. In consummating the deal Herman delivered with the note and mortgage an assignment executed so as to entitle the same to be recorded, except the name of the assignee was left blank, a satisfaction, in form, of the Lawrie mortgage executed by Herman without the knowledge of or consent of Lawrie, and an abstract of title

showing the first $1,600 mortgage to be unsatisfied of record.
In January, 1903, Friend completed the assignment by writ-
ing in the name of A. G. Stein, of New York, as assignee.
Neither Stein, Herman, nor Lawrie knew of this.    Friend
acted for Stein under a duly recorded power of attorney au-
thorizing him to do such business.    Before the commencement
of this action Friend, under such power, assigned the securi-
ties acquired by him as aforesaid to the plaintiff, though the
assignment was not executed so as to be entitled to record,
and the same has never been recorded.    Stein did not furnish
any money to carry out the transaction aforesaid or know of
the same.    When Friend acquired the mortgage from Herman
he had notice of the state of the record as to the Lawrie mort-
gage.    He made no inquiry therefor, nor was the mortgage or
the note secured thereby produced at the time of the transac-
tion, nor was there any evidence produced on the trial that
such securities were then in Herman's possession.    Herman
did not execute said satisfaction with the intention of deliv-
ering the same to the mortgagors.    It was not received by
Friend with the understanding that it was to be so delivered.
He retained the same until April 10, 1903, when he caused
it, together with the assignment, to be duly recorded.

Shortly thereafter Herman absconded.    Friend knew, prior
to such departure, of Herman's intentions in the matter.    At
the time of the transaction between Friend and Herman in
respect to the mortgage, the latter delivered to the former
$3,000 face value of corporate stock to secure payment of
$1,800, he at the same time giving Herman his check for that
amount, which was subsequently paid.    The stock was later
returned to Herman.    Plaintiff knew nothing of this trans-
action.    For some fifteen years prior to Herman's departure
he was an active business man in Milwaukee, where all the
transactions referred to occurred.    During such period he
was engaged in many business matters and enterprises, in

some of which Friend was associated with him, and their relations were very close and friendly. On the eve of Herman's departure he transferred to Friend some property in settlement of various claims the latter had against him. The Lawrie note and mortgage were returned to Lawrie some time after the execution of the second $1,600 mortgage. Other facts were found sufficient to support the judgment, if correct conclusions of law were drawn by the trial court.

The court held thus: The Lawrie mortgage is in full force and the first lien upon the premises described in the complaint. The second $1,600 mortgage and note were taken by Herman, and the money obtained therefor from Friend, with the intention on the former's part of converting the same to his own use. The assignment of such mortgage was too incomplete when delivered to be effective for any purpose, and it was not made effective thereafter, in that it was not re-witnessed and acknowledged after its completion by filling in the name of an assignee. Friend took the mortgage with constructive notice of Lawrie's rights under the first mortgage, and not as a *bona fide* holder. The satisfaction, in form, of Lawrie's mortgage was ineffective for want of delivery thereof to the mortgagors. Herman was not the agent for Lawrie in taking and disposing of the second $1,600 mortgage. The several mortgages mentioned, as regards priorities, rank as follows: The Lawrie mortgage first, the *Vedder* mortgage second, the *Yahr* mortgage third, and the plaintiff's mortgage fourth.

Judgment was entered accordingly, from which plaintiff and *Yahr* separately appealed.

For the appellant *Yahr* there was a brief by *Turner, Hunter, Pease & Turner,* and oral argument by *C. F. Hunter.*

For the appellant *Friend* there was a brief by *Charles Friend* and *Arthur S. Friend,* and oral argument by *Arthur S. Friend.*

*G. W. Hazelton,* for the respondents.

The following opinion was filed October 24, 1905:

MARSHALL, J. The finding that appellant is not the *bona fide* holder of the $1,600 mortgage of November 14, 1902, is grounded, in the main, on the following supposed infirmities in her position: (1) The transfer of the mortgage was ineffective because the assignment was incomplete when delivered, in that the space for the name of the assignee was blank, and it was not re-acknowledged after being completed. (2) Charles Friend had constructive notice of the first $1,600 mortgage, referred to as the Lawrie mortgage, when he took and paid for the one in question, and did not make any inquiry as regards whether Herman, the owner of record, had parted therewith or require production of papers showing that he was such owner in fact, or indicating that he had authority to make the satisfaction thereof. (3) The satisfaction, in form, of such first mortgage delivered to Friend by Herman was invalid because the latter neither had authority to make it nor was it made to be delivered by him to the mortgagors, nor given to Charles Friend to be so delivered. (4) The assignment was completed, in form, by writing in the name of Stein without his knowledge or his having furnished any funds with which to purchase the securities. (5) The note and mortgage were by Charles Friend, acting under a power of attorney from Stein but without the latter's knowledge, assigned in writing to the plaintiff, the writing not being witnessed or acknowledged. We will consider such supposed infirmities in their order.

1. This court has so repeatedly held that one who holds a paper executed by another, as in this case, with express or implied authority to fill up the blanks therein, may do so, and then record the instrument if that is necessary, with the same effect as though the paper had been fully made before delivery, that we hardly need do more than refer to a few of the instances. *Vliet v. Camp,* 13 Wis. 198; *Van Etta v. Even-*

*son,* 28 Wis. 33; *Schintz v. McManamy,* 33 Wis. 299; *Johnston H. Co. v. McLean,* 57 Wis. 258, 15 N. W. 177; *Nelson v. McDonald,* 80 Wis. 605, 50 N. W. 893.

Numerous decisions, most of them being quite ancient, may be found holding to the contrary of the foregoing. Those, however, of this court in respect to the matter are in harmony with the now prevailing rule. DIXON, C. J., in *Van Etta v. Evenson, supra,* said, as to the supports of conflicting decisions: "They are grounds of the purest and most unalloyed technicality, originating in a state of things and condition of the law which have long since passed away." The rule deducible from that decision is clearly indicated in the syllabus in these words:

"Where a note and mortgage otherwise fully executed, but with a blank in each for the name of the payee and mortgagee, were delivered to an agent who was to procure (from whomsoever he could) a loan of money thereon for the maker, this shows an intention that the agent should fill the blanks, and when so filled the instruments were valid without a new execution and delivery."

It will be found decided in some cases holding that blank spaces, such as the one in question, may be filled up after delivery of the paper by authority in writing, that parol authority is insufficient, and that if it were otherwise authority could not be implied from the mere delivery of the paper in its incomplete condition: but the general rule is that when one delivers an instrument, whether the same be required to be under seal or not, so executed as to, in form, give it full validity upon the filling up of blanks, authority for the holder thereof to do that is implied.

2. True, Friend had constructive notice of the first mortgage, but he had no notice, constructive or otherwise, of its assignment to Lawric. The idea that one is not protected in dealing with the record owner of a mortgage, as regards a satisfaction thereof, unless the latter produces the securities, showing affirmatively that he is the right one to enter such

satisfaction of record, is not in harmony with the recording act nor with the adjudications on the subject. There is nothing which we can discover charging Friend with knowledge of a state of things sufficient to put him on inquiry as to whether Herman was in fact the owner of the first mortgage. He had a right to assume that if Herman had assigned the mortgage that fact would appear of record. No such fact so appearing and no circumstance coming to his knowledge indicating the true state of things, or suggesting the probability of such state being inconsistent with the record, when Herman delivered the satisfaction to him he was warranted in supposing, as he did, that the note had been paid and with the mortgage delivered to the mortgagor.

The law as above indicated is supported by the following authorities: *Girardin v. Lampe,* 58 Wis. 267, 16 N. W. 614; *Bank of the State of Indiana v. Anderson,* 14 Iowa, 544; *Vannice v. Bergen,* 16 Iowa, 555; *Livermore v. Maxwell,* 87 Iowa, 705, 55 N. W. 37; *Ahern v. Freeman,* 46 Minn. 156, 48 N. W. 677; *Ogle v. Turpin,* 102 Ill. 148. In *Girardin v. Lampe, supra,* the facts were these: The assignee of the mortgage took a defectively written transfer thereof and recorded it. Subsequently the assignor discharged the mortgage. Later a third person for value acquired an interest in the mortgaged property without notice of the assignment, other than such as was afforded by the defective record. That was not effective because the instrument of assignment was not so executed as to entitle it to be recorded. It was held that the third person's interest in the property was paramount to the mortgage. The gist of the decision in *Ogle v. Turpin, supra,* and the facts involved are stated concisely in the syllabus in these words:

"An assignee of notes secured by a mortgage may protect his equitable lien upon the mortgaged premises, by taking and putting upon record the assignment of the mortgage, so as to give notice of his interest, and thereby prevent others from

being deceived by any subsequent satisfaction entered of record by the mortgagee."

"A person taking a mortgage from the payee will not be held chargeable with notice that the notes secured in the first mortgage have been assigned, but he may rely upon the record, as showing title in his mortgagor."

The other cases cited are quite as decisive on the point under discussion. The purpose of the record is too obvious, and the law in respect to the matter, as indicated, too plain, to require any very extended discussion of the matter. When one deals with another respecting real estate, in the absence of actual notice of the true state of the title or of facts sufficient to put him on inquiry in respect thereto, he may safely rely on the record. If that works hardship to a third person, as in a case like this, it is chargeable to the latter's negligence in not exercising ordinary care to guard his own interest by causing the record to show the actual state of the case. The rule applies that, as between two innocent persons, one of whom must suffer pecuniary loss, the one is to be preferred who is without fault.

3. The point that Herman did not have authority to make the satisfaction has been sufficiently answered. He had apparent authority and that was sufficient. The record, which persons circumstanced as Friend was had a legal right to rely upon, indicated the existence of such authority. Delivery of the satisfaction piece to the mortgagor, or preparation of it for that purpose, was not essential to its validity. The only purpose of such an instrument is to create record evidence of that which is accomplished by mere payment of the indebtedness. Since *Ward* and Lawrie were responsible for the state of the record, indicating that Herman was the proper person to make the instrument of satisfaction, as to innocent third persons it was competent for him to do so. This is unlike a case where the person appearing of record to be authorized to satisfy a mortgage deposits a satisfaction piece with a third person for delivery to the mortgagor upon condition, and he

makes delivery regardless thereof. In such circumstances the instrument is held to be void, because the person purporting to be bound never in fact acted in the matter. *Franklin v. Killilea, ante,* p. 88, 104 N. W. 993.

4. The fact that Stein's name was added to the satisfaction piece as that of the assignor without his knowledge, and that he did not furnish the funds given in exchange for the se-curities, has no significance in view of the power of attorney. It is undisputed that the title to the property was placed in Stein's name for convenience and by his permission.

5. The circumstance that Stein did not know of the assign-ment of the securities, in form, to *Mrs. Friend* is of no sig-nificance in view of the power of attorney. The circumstance that *Mrs. Friend* did not know of the acquirement of the se-curities when it occurred is not important, since the evidence shows that her son Charles had ample authority to act for her in such matters and parted with full value in her money, or his own, in exchange for the property. Whether in the trans-action the money was regarded by the parties as a loan, as the court in effect found, is immaterial since the evidence is un-disputed that the same was not repaid and was finally treated as purchase money. Whether it was the one or the other does not affect the *bona fides* of the transaction. The circumstance that the assignment to *Mrs. Friend* was not witnessed or ac-knowledged is likewise of no significance. Neither was essen-tial to transfer title. The *bona fides* of her ownership rests on the transaction between Charles Friend and Herman.

The findings to the effect that Herman absconded soon after the transaction with Charles Friend; that the latter knew of the former's secret intentions in that regard; that the rela-tions between the two for years prior had been very close and friendly, do not seem to require any extended notice. Coun-sel laid considerable stress on these circumstances upon the oral argument, as if they should be regarded as of some weight as to whether Friend knew, or ought to have known, when he

·obtained the mortgage that Herman had no right to satisfy
the Lawrie mortgage.    However, it does not seem that the
·conclusions of law were grounded on such circumstances.    At
best they are sufficient to create mere suspicion.    They do not
warrant the belief that Friend colluded with Herman in the
fraudulent transaction as to the *Wards* and Lawrie, or that
he had knowledge, or ought to have had, at the time he ac-
quired the note and mortgage that Herman was acting cor-
ruptly in the matter.    Knowledge only came to him, as ap-
pears, of Herman's secret intentions to leave the country
months after he obtained the securities.    He certainly had a
right to suppose, as the fact was, that the second $1,600 mort-
gage was given to provide means to take up the first one.    He
testified that he so understood the matter when he took the
mortgage, and that he then had no knowledge of Herman's
being financially embarrassed.    There is no satisfactory evi-
·dence to impeach that.

It is contended on behalf of both appellants that the evi-
dence clearly shows that the Lawrie mortgage was discharged
in fact by the indebtedness to which it was incident being col-
lected by Herman as Lawrie's agent, and that the findings in
respect to that branch of the case are clearly wrong.

It must be conceded that if, while the securities were in
Herman's possession for the purpose of collecting the indebt-
edness, he executed such purpose the money obtained belonged
to Lawrie, and the mortgage lien was extinguished regardless
of any formal entry to that effect upon the record.    The trial
court found that there was no claim on the trial that the Law-
rie papers were in Herman's hands November 24, 1902, when
the transaction with Friend occurred, and no evidence that he
then had such possession.    That was excepted to as were other ·
findings touching the question of payment.    It seems that
the attitude of counsel for appellants on this branch of the
case and the effect of the evidence must have been misunder-
stood.    Counsel must have claimed from the first to last that

Herman was the agent of Lawrie to collect the latter's claim, during all the transactions in relation thereto. It was important to show that he was armed with the proper evidence of such authority, not only when the mortgages were made November 14, 1902, but when the transaction occurred with Friend. No one claimed at the trial, we assume, certainly no one does upon appeal, that authority to collect of *Ward* authorized acceptance in payment of anything but money. It was obviously and properly claimed that if he trusted Herman to provide means out of the new mortgages made November 14, 1902, to pay Lawrie, and the latter did so before his authority was terminated, extinguishment of the Lawrie mortgage was the legal effect thereof.

Now the court found that Herman had the Lawrie papers a short time prior to November 14, 1902, with authority to collect of *Ward*. While such authority did not by implication include authority to accept in payment anything but money, it included authority to exercise reasonable discretion as to the means to be used to accomplish the purpose of the agency, such as the employment of an attorney to foreclose the mortgage. When did the agency terminate? The findings do not cover that directly. They, in effect, hold that it ended when the papers were placed in Comstock's hand. We infer that because of silence as to whether Comstock returned the papers to Herman prior to the occurrences of November 14, 1902, leaving it to be assumed that he did not, and because of the finding that he did not participate in such occurrences. The views thus taken of the evidence by the trial court, which seem to be clearly unwarranted, resulted in the making of the finding as to there being no evidence that Herman had the Lawrie papers at the time of the transaction with Friend November 24, 1902. It appears to be clearly established by the proofs that Comstock returned the papers to Herman on or prior to November 14, 1902; that he had them at that time; that Comstock had notice of the meeting on that date at Herman's office

and participated therein; and that such papers did not leave Herman's possession till after November 24th thereafter.

The evidence, as we read it, is to the effect that the amount necessary to discharge the indebtedness to Lawrie and other claims upon *Ward's* property existing November 14, 1902, and the costs of the foreclosure was determined by Comstock and a statement thereof made by him in writing at the request of *Mrs: Ward* and *Mr. Yahr,* and that the three then went to Herman's office to settle the matter. This is *Yahr's* testimony on the subject:

"We met up in Comstock's office and he then had the final figures showing how much money it would take to settle these whole amounts, that is, the amount due on the Lawrie mortgage, and on my mortgage, and on the unpaid taxes and interest. By my mortgage I mean the $300 mortgage held by the Baumbach Company. Then we all went down to Mr. Herman's office, Mr. Comstock, *Mrs. Ward* and I. Mr. Herman was waiting there for us. The Lawrie note and mortgage were in his office at that time. That was on the 14th day of November, 1902, the day the papers were executed. Mr. Herman had the note and mortgage there."

The witness testified further, in effect, that at such meeting he discharged his mortgage and advanced $300 in money, taking a new mortgage for $600; that he insisted upon seeing the satisfaction of the Lawrie mortgage before doing so; that Herman exhibited the same to him, and that Comstock remained with Herman and *Mrs. Ward* till after he concluded his part of the business and went away. *Mrs. Ward* testified to the same effect. Comstock testified that nothing positively was concluded as to the settlement of the Lawrie indebtedness in his office, or at any office when he was present. He did not testify that he had no notice of the meeting at Herman's office on November 14, 1902. The trial court seems to have accepted the witness's general conclusion as warranting the finding that he had no such notice, though *Mrs. Ward* and *Mr. Yahr* testified to the contrary, and his evidence is contra-

dictory and very unsatisfactory. He testified that *Mrs. Ward*
and *Mr. Yahr* called on him at his office in relation to the set-
tlement of the Lawrie indebtedness, and that a conversation
was then had resulting in an agreement in respect to the mat-
ter. He said nothing at first as to Herman being present, or
in respect to the Lawrie papers. Later he said:

"Mr. Herman had possession of the Lawrie note and mort-
gage at that time." (Referring to the time of the conversa-
tion in his office.) "I had two interviews. The conversation
I am speaking of was in my office, and I had also previous to
that time met with them in Mr. Herman's office. After this
conversation I had nothing more to do with the matter one
way or the other. *At the time of the last interview Mrs.
Ward, Mr. Herman, and Mr. Yahr were present.* That was
previous to the interview to which I testified." (Again re-
ferring to the conversation in his office.) "At that time Mr.
Herman had the mortgage and note there."

Thus it will be seen the witness said that Herman was pres-
ent at the time of the conversation in the former's office when
the agreement was made (obviously the same agreement tes-
tified to by *Mrs. Ward* and *Mr. Yahr,* which was concluded in
Mr. Herman's office), and that Herman then had possession
of the Lawrie papers. He spoke of that as the last he had to
do with the matter, and of the last interview (the one when
*Mrs. Ward, Mr. Yahr,* and Mr. Herman were present) as
having occurred previous to the interview in his office, which
he declared was the last interview. How one of two inter-
views could be the last, and yet have occurred previous to the
other, would be difficult to explain. The witness was evi-
dently confused in respect to the matter. Probably there
were two interviews. *Mrs. Ward* and *Mr. Yahr* testified that
there were; that one occurred in Comstock's office some days
prior to November 14, 1902, and that the other occurred on
such date partly in Comstock's office and partly in Herman's
office. Comstock could not reasonably be expected to remem-
ber the transaction as clearly as *Mrs. Ward* and *Mr. Yahr.*

His office was but a few steps from Herman's, both being in the same building. A circumstance of going from one to the other was probably not of much significance to him. The transaction involved was an ordinary one in a lawyer's professional career, while to *Mrs. Ward* and *Mr. Yahr,* particularly the former, it was an unusual matter. On the main point all the witnesses agree, in this, when the negotiations took place for a settlement of the Lawrie indebtedness and the giving of a new mortgage to accomplish it, Herman was in possession of the Lawrie papers.

So the true state of the case appears to be this: On the 14th day of November, 1902, Herman then having the Lawrie papers and authority to accept payment of the indebtedness, *Ward* intrusted him with three mortgages on his property for the purpose, in the main, of raising the necessary money to make such payment. Three hundred dollars was at that time obtained from *Yahr.* Subsequently by the transaction with Charles Friend the balance of the money for such payment was obtained. *Yahr* and *Ward* acted in the matter on the faith of Herman's having possession of the Lawrie papers and authority, as record owner of the mortgage, to discharge it. There is no evidence that Herman parted with the Lawrie papers after November 14, 1902, and before the occurrence of November 24th, thereafter, or as to when Lawrie regained such possession. The reasonable inferences all indicate that Herman had them till some time subsequent to the transaction with Friend. Such is the legal inference. One of the most familiar rules of evidence is that "when . . . the existence of a . . . personal relation . . . is once established by proof, the law presumes . . . that the . . . relation . . . continues to exist as, before, until the contrary is shown, or until a different presumption is raised, from the nature of the subject in question." 1 Greenl. Evidence (15th ed.) § 41; *Body v. Jewsen,* 33 Wis. 402; *Eames v. Eames,* 41 N. H. 177.

We cannot escape the conclusion that the finding of the trial court that there is no proof that Herman was in possession of the Lawrie note and mortgage November 24, 1902, and the finding, in effect, that he was not then the agent of Lawrie to collect of *Ward,* is contrary to the clear import of the evidence. During the continuance of Herman's agency for Lawrie to collect of *Ward,* and his agency for the latter to use the mortgages executed November 14, 1902, for the purpose of securing money to pay such indebtedness, he performed in both those respects. Thereby the Lawrie mortgage was extinguished, leaving its equivalent in Herman's hands for Lawrie. Herman's failure to pay the money to his principal is a misfortune which the latter's representatives cannot rightfully shift to the holders of the other mortgages. Herman embezzled Lawrie's money, not *Ward's.*

*By the Court.*—The judgment is reversed on both appeals, and the cause remanded with directions to render judgment in accordance with this opinion.

A motion for a rehearing was denied December 12, 1905.