STATE, Appellant, vs. M. SUPPLE & SONS COMPANY, INC., Respondent.

*January 19—April 9, 1940.*

For the appellant there was a brief by the *Attorney General, James Ward Rector,* deputy attorney general, *N. S. Boardman,* assistant attorney general, and *Robert G. Kroncke* of the staff, and oral argument by *Mr. Boardman.*

For the respondent there was a brief by *T. L. Doyle* and *Allan L. Edgarton,* both of Fond du Lac, and oral argument by *Mr. Doyle.*

The following opinion was filed February 13, 1940:

ROSENBERRY, C. J. The trial judge prepared and filed the findings of fact. Because of their comprehensiveness and brevity the findings are printed in full.

"1. Between February 1, 1930, and March 1, 1932, the defendant constructed the Rubble Mound Bulkhead or shore protection described in the complaint in what was then shallow water in Lake Winnebago and filled in about four hundred square yards of earth between the bulkhead and what was then the shore of the lake.

"2. The said work was done under the authority and supervision of the government of the United States, acting through its lawfully constituted authorities, to wit, the secretary of war and his chief engineers. On January 13, 1930, Colonel E. M. Markham, one of said engineers by authority of the secretary of war issued to the defendant a permit authorizing it to build said bulkhead and fill with earth the space between the bulkhead and the then shore. The permit, among other things, provided that 'proposed shore protection to follow shore line as shown on Gov. Chart No. 4.' Gov. Chart No. 4 was prepared by federal engineers from surveys made between June 12, 1916, and July 31, 1920. It shows the location on the chart of a proposed shore protection on what was then dry land above the water of the lake. It contains a descriptive note saying '753.5—Center line of

proposed levee with elevation on top.' The defendant constructed the bulkhead at the place authorized by said permit. The permit was issued and the work therein referred to was authorized for the purpose of improving navigation and for the purpose of designating a proper shore line and providing for proper shore protection as planned by the federal authorities. All the work authorized by the permit has not been completed. Authority to complete the work expired on December 31, 1936.

"3. All work done by the defendant in constructing said bulkhead and filling with earth the space between the bulkhead and the then shore was authorized, ratified, and confirmed by the state of Wisconsin, acting by and through its lawfully constituted authorities, to wit, the common council of the city of Fond du Lac, in which said city said improvements are located, by an ordinance duly passed by said common council on November 1, 1932, and duly published on November 5, 1932, which ordinance authorized, ratified and approved all work done by the defendant under said federal permit.

"4. The defendant owns all the land bordering on the southwest side of the bulkhead and all land between the bulkhead and the public highway extended between Fond du Lac and North Fond du Lac. A part of defendant's land consists of a large licensed muskrat farm bordering on the highway. The bulkhead is necessary to properly confine the water of the lake within its proper limits and to prevent the water from tearing away the intervening ground, destroying said farm and endangering the safety of said highway.

"5. The bulkhead and other improvements were lawfully constructed. They do not unlawfully encroach on any water of the lake. They do not constitute a public nuisance or a purpresture.

"6. The title to the land between the bulkhead and the present shore is not in the state, neither above nor below the water level, neither the state nor the public acquired any right to use this territory for purposes of navigation. All this territory was dry land until a time less than twenty years before the time when the bulkhead was constructed. The shore line as it existed prior to the year 1920, was sub-

stantially the same as the line on which the bulkhead is now constructed, except that the bulkhead line as it extends from the northwest to the southeast encroaches on said former shore line as it approaches the mouth of the Fond du Lac river and for that reason is somewhat straighter than the former shore line. The evidence is insufficient to prove any greater discrepancy in these lines.

"There was some conflict in the oral evidence on the subject, but the facts were clearly established when Gov. Chart No. 4 (Exhibit 48) was introduced in evidence at the close of the trial and considered with the other evidence and compared with fixed objects on the ground at each end of the bulkhead and at intervening points.

"7. The shore did not wear away gradually by erosion nor as a result of floods caused by heavy rains, but destructive waves after destroying a line of trees along the shore, tore away the shore in large pieces at irregular intervals, the waves being caused by strong northerly winds, which winds caused the water to rise and pile up in the south end of the lake because of the shape of the lake, its narrow part being at its south end.

"8. At the time of the construction of the bulkhead, with the lake at its usual low-water level, the water between the bulkhead and the then shore, varied in depth from about zero to about one foot. On most of this ground the water was too shallow to be used for purposes of navigation. The deeper water was too small in area to be useful for that purpose. The water was not useful as a passageway between navigable parts of the lake. When the water in the lake was higher than its usual low-water level the water in this area at times was of sufficient depth for the passage of flat-bottom rowboats.

"No loss or damage to the state or to the public or to any person was caused by the construction of the bulkhead or the filling with earth. If any inconvenience resulted to any hunter or fisherman, it was a mere incident to the lawful improvement of navigable water."

Most if not all of the difficulties presented in this case arise from the fact that the area adjacent to Lake Winnebago is a swamp or marsh only slightly above the lake level. In

times of high water, parts of the swamp are flooded. When the waters recede there is nothing to indicate the high-water mark. There is not at the point in question, as appears from all of the evidence, a well-defined shore line where the point where the lake ends can plainly be seen.

The plaintiff contends, (1) that the breakwater described in the findings of the court is located on the bed of the navigable water of Lake Winnebago; (2) that since the enactment of secs. 30.01, 30.02, 31.23, and 31.24, Stats., the defendant had no right without the consent of the state to invade the bed of Lake Winnebago with a structure of any kind even though the structure be one in aid of navigation; (3) that the permit obtained from the secretary of war can give the defendant no right to maintain an obstruction on the bed of the lake as against the state of Wisconsin; and (4) that the ordinance adopted by the city council of the city of Fond du Lac conferred no authority upon the defendant to erect and maintain the obstruction in question.

It is apparent that the contentions of the plaintiff depend wholly upon whether the bulkhead in question is on the bed of the lake. Whether the bulkhead is on the bed of the lake is clearly a question of fact. The trial court found specifically that—

"All this territory was dry land until a time less than twenty years before the time when the bulkhead was constructed. The shore line as it existed prior to the year 1920, was substantially the same as the line on which the bulkhead is now constructed, except that the bulkhead line as it extends from the northwest to the southeast encroaches on said former shore line as it approaches the mouth of the Fond du Lac river and for that reason is somewhat straighter than the former shore line."

If the bulkhead is located as found by the court, then the propositions made by the plaintiff which rest upon the claim that the bulkhead is upon the bed of the lake must fail. Therefore the first question presented is whether the findings

of the trial court are against the great weight and clear preponderance of the evidence. As established by a long line of authorities unless they are, they must stand. The court among other exhibits considered Gov. Chart. No. 4, which was prepared as a part of a survey of the shore of Lake Winnebago by government engineers. The surveys were made between 1916 and 1919. The permit issued by the war department and referred to in the findings is based upon this survey. While it is true as claimed by the plaintiff that the permit issued by the war department conferred no vested rights upon the defendant company, the map itself is of great evidentiary value. It appears without dispute that in the government survey the shore line was indicated. The breakwater is located substantially upon the shore line thus indicated by the engineers. If there are deviations they are slight and not substantial. It was prepared by governmental authority for use by the war department in regulating the navigation of Lake Winnebago, the regulation of such navigable waters having been conferred upon the war department by act of congress. In addition to Gov. Chart. No. 4 there were maps by other engineers; the testimony of witnesses who had lived in the vicinity for many years and others who had knowledge of the facts involved was taken. The court viewed the place in question. There was a direct and irreconcilable conflict in the evidence. In determining the facts much depended upon the credibility of the witnesses and their opportunity for observation. While it is probably true that there are some slight deviations of the breakwater from the shore line due to sinuosities or indentations of the shore, such variations are not substantial. No useful purpose would be served by setting out in detail the evidence of the various witnesses. It is probable but not so clear that a finding that the breakwater was not located on the shore line might be sustained. However, from a careful examination of the evidence, including the maps, photographs, as well as

the testimony of witnesses, we are convinced that it cannot be said that the findings of the trial court are against the great weight and clear preponderance of the evidence. The trial court having found that the bulkhead was not on the lake bed, no useful purpose would be served by a discussion of the law of the case. Whatever the law may be, it is clearly the law that the state has no right to abate the bulkhead or require its removal or enjoin its maintenance if it is not located upon the bed of Lake Winnebago.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied, without costs, on April 9, 1940.