SPHATT and wife, Appellants, vs. ROTH and another, Respondents.

*September 14—October 12, 1948.*

*Earl J. O'Brien,* attorney, and *Cyril C. Foster* of counsel, both of Milwaukee, for the appellants.

*Harry Primakow,* attorney, and *Joseph P. Brazy* of counsel, both of Milwaukee, for the respondents.

MARTIN, J. Plaintiffs herein do not dispute the facts found by the trial court. The sole question involved is as stated by plaintiffs: "Was there a *bona fide* sale of the property herein to the defendants or their agent?" This question was answered, "Yes" by the trial court and judgment entered in favor of the defendants. The defendants asked for a review of that part of the judgment denying defendants a brokerage commission and awarding the plaintiffs the sum of $500. We shall discuss these questions in the above order.

On October 31, 1945, Wenzel R. Sphatt and Mary C. Sphatt, his wife, and William Roth and Clinton R. Taplin, copartners, doing business as Roth & Taplin, entered into a real-estate listing agreement for the sale of the following described real estate situated in Milwaukee county, Wisconsin, and for the sale of certain personal property located thereon:

Lot numbered five (5), in block numbered eight (8) in Mitchell Manor, a subdivision of a part of the northwest one quarter (NW ¼) of section numbered eleven (11) in township numbered six (6) north, range numbered twenty-one (21) east, in the city of West Allis.

Said listing agreement provided among other things for the payment by the plaintiffs to the defendants of a broker's commission of five per cent of the sale price for obtaining a purchaser for said property.

On December 12, 1945, the defendants as agents for the plaintiffs presented a form of agreement for purchase and sale of real estate which was executed by the plaintiffs as sellers and by Earl L. Kester and Helen R. Kester as buyers. The purchase price of said real estate was the sum of $10,300, of which the sum of $500 was paid at the execution and de-

livery thereof. The said agreement provided, among other things, that in the event the buyers fail to carry out the agreement, the $500 paid thereunder shall, at the option of the seller, be forfeited and be paid to the seller as liquidated damages, subject to deductions of broker's commission and disbursements. The said purchase price included the stock in trade and certain fixtures and personal property then owned by the plaintiffs and which were then located upon the premises in question. The said agreement was also made subject to the obtaining of a G. I. loan of $2,000 within thirty days from the date of said agreement. Thereafter the said G. I. loan referred to was approved in favor of the said buyers by the Veterans Administration and on March 5, 1946, the parties to the said transaction were waiting for the processing of said loan through a building and loan association so as to complete the transaction.

On March 5, 1946, the defendants produced a warranty deed of said premises to be executed by the plaintiffs pursuant to said agreement of sale above mentioned in which deed the space where the name of the grantee or grantees should have appeared was left blank. The defendant Taplin at that time informed the plaintiffs that the loan had not been completed but that the defendants would, on behalf of the purchasers, advance the balance of the purchase money owing the plaintiffs pursuant to said agreement for purchase and sale since the plaintiffs were anxious to complete the transaction, and that as soon as the loan being arranged for by Kester and his wife, the purchasers, was completed the defendants would insert in the blank space in the deed, where the name of the grantees had been omitted, the name of such person or persons as the Kesters desired to nominate as such grantees. Defendant Taplin also then stated that in the event that the Kesters should refuse to consummate the real-estate transaction that the defendants would insert the name of some other purchaser whom they, the defendants, would procure.

The plaintiffs were satisfied with such arrangement and executed the said warranty deed as grantors on March 5, 1946, and delivered the deed to defendant Taplin for the purpose of having the latter deliver the same to the Kesters or such other grantee as soon as the name of such grantee could be ascertained and inserted in the deed. At the same time defendant Taplin delivered to the plaintiffs a statement which showed the sale price of $10,300, and certain deductions, including two mortgages amounting to $5,000 which were to be paid by the purchasers, and a $500 brokerage commission. The balance of $4,473.62 was thereupon paid to the plaintiffs by check of the defendant Clinton R. Taplin dated March 6, 1946.

Thereafter, Earl L. Kester, one of the purchasers, informed defendant Taplin that he and his wife had changed their minds about the purchase. The defendants urged Kester to take the property but the latter procured an independent appraisal which showed a value of only $8,000 for the premises and he insisted upon cancellation of his obligation as purchaser and a refund of the $500 deposit made by Kester upon the purchase price pursuant to the agreement for purchase and sale of the real estate. Without the knowledge or consent of the plaintiffs who were unaware of the fact that Kester had refused to go through with the transaction, the return of the said $500 was made by check signed by Myrtice C. Taplin.

Defendants then attempted to find another purchaser for the property but without success, though the property was extensively advertised. In June, 1946, the defendants inserted the name of their nominee, Myrtice C. Taplin, the wife of one of the defendants, as grantee in the warranty deed executed by plaintiffs, and the same was recorded in the office of the register of deeds of Milwaukee county on June 27, 1946. Plaintiffs were not informed that said name would be inserted in the deed as grantee. The plaintiffs had no

knowledge of the failure of the Kesters to consummate the purchase until on or about May 1, 1946, when Mary C. Sphatt had been informed that the mortgages had not been paid, and that the defendants claimed to be the owners of the premises. This information was confirmed in a letter dated May 3, 1946, from defendants to plaintiffs. On May 4 and June 15, 1946, defendants paid the interest due on the two outstanding mortgages, respectively, and obtained satisfactions of the same on July 2, 1946. Improvements were made by the defendants on the building and on January 1, 1947, the approximate value of the property was $13,000.

In a letter to the defendants, dated June 21, 1946, plaintiffs offered to return the money advanced to them by the defendants, plus the taxes and interest paid by the defendants, less the value of any personal property removed by the defendants from the premises upon the defendants submitting evidence of the amounts paid out by them in behalf of plaintiffs. The plaintiffs also requested the return of all keys to the premises as well as all papers and documents received by the defendants from the plaintiffs in connection with this matter. On or about June 28, 1946, plaintiffs tendered to defendants the $4,473.62 advanced by the defendants on March 5, 1946, but the defendants refused said tender.

The question is, under these circumstances, did defendants make a full and fair disclosure to the plaintiffs. It might also be said here that defendants did considerable improving of the property after they paid the purchase price to plaintiffs and that the property had increased some in value. Where, as here, the purchase price had been paid to grantors in exchange for the blank deed with the understanding that Kester's name or some other as grantee would be substituted, the instrument operates to transfer title to the named grantee.

It is stated in the syllabus of *Friend v. Yahr* (1905), 126 Wis. 291, 104 N. W. 997:

"1. A person having executed an instrument, leaving blank spaces therein to be filled, and delivered the same in such imperfect condition to another for use, the presumption is, nothing appearing to the contrary, that such person intended to confer upon such other authority to complete the instrument.

"2. The rule above stated applies to instruments required by law to be executed under seal and to be witnessed and acknowledged in order to entitle the same to be recorded, as well as to simple contracts.

"3. In case of implied authority, in the circumstances stated in the foregoing propositions, being performed the instrument does not require re-execution or acknowledgment to give it full validity."

In the findings of fact the trial court found an express parol authority to insert Kester's name or the name of another buyer if Kester defaulted and, further, at a conference between the parties it was then and there stated that if Kester refused to go through with the deal the defendants advised plaintiffs that if they did not secure another purchaser they would take the property themselves. This seems to be a full and fair disclosure and was acquiesced in by the plaintiffs.

Restatement, 2 Agency, p. 877, sec. 390, comment *a*:

"One employed as agent violates no duty to the principal by acting for his own benefit if he makes a full disclosure of the facts to an acquiescent principal and takes no unfair advantage of him."

The trial court's finding will not be disturbed unless it is contrary to the great weight and clear preponderance of evidence.

It is stated in *Coryell v. Bluett* (1947), 251 Wis. 458, 461, 29 N. W. (2d) 741:

"Unless these findings are contrary to the great weight and clear preponderance of the evidence, we may not disturb them."

It is also stated in *Estate of Nols* (1947), 251 Wis. 90, 95, 28 N. W. (2d) 360:

"We cannot say that these findings are contrary to the great weight and clear preponderance of the evidence, and we are accordingly bound by them. *State v. M. Supple & Sons Co.* (1940) 234 Wis. 255, 290 N. W. 139. It would serve no useful purpose to review evidence which would warrant other findings."

We find no application of sec. 240.06, Stats., in this transaction as set out in plaintiffs' argument.

It is stated in *Padol v. Switalski* (1946), 248 Wis. 183, 188, 21 N. W. (2d) 375:

"A contract for the sale of lands which clearly appears from several writings considered together satisfies the statute of frauds and may be specifically enforced."

It is the rule in this state that where a broker is authorized to sell his principal's property that for him to purchase it himself he is bound, due to the relationship of principal and agent, by additional and greater obligations and duties than are required in ordinary business transactions between buyer and seller (*Wasweyler v. Martin* (1890), 78 Wis. 59, 46 N. W. 890; *Pederson v. Johnson* (1919), 169 Wis. 320, 172 N. W. 723; *Hustad v. Drives* (1923), 181 Wis. 87, 193 N. W. 984; 12 C. J. S., Brokers, p. 96, sec. 41; 1 Mechem, Agency (2d ed.), p. 882, sec. 1207); and that a broker can neither purchase from, nor sell to, his principal unless the latter expressly assents thereto or, with full knowledge of all the facts and circumstances acquiesces in such a course. (*Restlawn Memorial Park Asso. v. Solie* (1940), 233 Wis. 425, 289 N. W. 615; 12 C. J. S., Brokers, pp. 102, 103, sec. 42; 4 R. C. L., Brokers, pp. 272, 276, sec. 24; 21 R. C. L., Principal and Agent, p. 830, sec. 13; 8 Am. Jur., Brokers, p. 1038, sec. 89.)

There is no proof of any fraud or coercion or concealment on the part of the defendants and the evidence adduced shows that a disclosure sufficient to satisfy these rules of law was made by the defendants.

The evidence shows that on April 1, 1946, Kester's down payment of $500 on the purchase price of the property, pursu-

ant to agreement dated December 12, 1945, referred to earlier in this opinion, was returned to said Kester by defendant Taplin *without the knowledge or consent of the plaintiffs.* The statement on the sale of the property (plaintiffs' Exhibit 5) dated March 5, 1946, signed by defendants and plaintiffs, shows, among other things, that a brokerage commission of $500 was deducted from the amount defendants paid to plaintiffs. Under these circumstances we feel that the trial court was right in ordering judgment in the sum of $500 against said defendants and in favor of plaintiffs. The court was further right in the allowance of costs and disbursements.

*By the Court.*—Judgment affirmed.