HILBOLDT, d/b/a CHARLES S. HILBOLDT INVESTMENT REAL ESTATE, Appellant, v. WISCONSIN REAL ESTATE BROKERS' BOARD, Respondent.*

*October 4—November 2, 1965.*

---

[4] *Supra,* footnote 1.

* Motion for rehearing denied, without costs, on January 4, 1966.

478

480

For the appellant there were briefs by *Michael, Best & Friedrich,* attorneys, and *Frank J. Pelisek* and *David R. Olson* of counsel, all of Milwaukee, and oral argument by *Mr. Pelisek.*

For the respondent the cause was argued by *Robert J. Vergeront,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

BEILFUSS, J. The issue, broadly stated, is: Does the evidence, as it appears in the record, sufficiently support the findings of the Wisconsin Real Estate Brokers' Board so as to justify a revocation of the appellant's real-estate broker's license?

Ch. 136, Stats., Real Estate Brokers' Board, is a regulatory legislative enactment, under the police power, designed, primarily, to protect the interest of the general public. The history, as set out by the early cases, reveals that prior to the enactment of these regulatory statutes unscrupulous persons dealt in the buying and selling of real estate either for themselves or others in an unethical and fraudulent manner to such an extent that regulation, for the protection of the general public, became necessary.

The statutes, as they now exist, provide that one cannot act as a real-estate agent, broker, or salesman unless he has a license issued to him by the state through the Real Estate Brokers' Board. Before a license can be issued the applicant must meet established qualifications as to education, knowledge of real-estate law, and ethical character. The statute further charges the board with the responsibility of suspending or revoking a license when the holder has violated statutory standards.

The statutory sections under which the board acted in this instance are as follows:

"136.08 (2) The board may also on its own motion, or upon complaint in writing, duly signed and verified by the complainant, and upon not less than 10 days' notice to the broker or salesman, suspend any broker's or salesman's license or registration if it has reason to believe, and may revoke such license or registration as provided hereafter, if it finds that the holder of such license or registration has:
"  . . .
"(b) Made any substantial misrepresentation with reference to a transaction injurious to a seller or purchaser wherein he acts as agent; . . .

"(h) Failed, within a reasonable time, to account for or remit any moneys coming into his possession which belong to another person;

"(i) Demonstrated untrustworthiness or incompetency to act as a broker, salesman or cemetery salesman in such manner as to safeguard the interests of the public; . . .

"(k) Been guilty of any other conduct, whether of the same or different character from that specified herein, which constitutes improper, fraudulent or dishonest dealing; . . ."

Hilboldt contends that evidence before the board is insufficient to permit a finding that he, as a real-estate broker, acted as agent for the purchaser, Family Service.

The scope of judicial review of the board's findings of fact is controlled by sec. 227.20 (1) (d), Stats., which authorizes a reviewing court to reverse or modify an administrative-agency decision if substantial rights of the aggrieved party have been prejudiced as a result of administrative findings being unsupported by substantial evidence in view of the entire record as submitted.[1] The credibility of the witnesses and the weight to be attached to the reasonableness of the evidence as a whole remains with the agency.

Without again detailing the evidentiary facts, we have no hesitancy in concluding that the findings of the board are supported by substantial evidence in view of the entire record. A finding that the representatives of Family Service understood that Hilboldt, as a real-estate broker, would act as their agent to procure suitable real estate for Family Service, and that Hilboldt agreed to act in that capacity is amply supported

[1] This statute has been considered and interpreted by this court in several recent cases, including *Green Bay & W. R. Co. v. Public Service Comm.* (1955), 269 Wis. 178, 68 N. W. (2d) 828; *Copland v. Department of Taxation* (1962), 16 Wis. (2d) 543, 553–555, 114 N. W. (2d) 858; *Pabst v. Department of Taxation* (1963), 19 Wis. (2d) 313, 323, 120 N. W. (2d) 77; and *Silverberg v. Industrial Comm.* (1964), 24 Wis. (2d) 144, 154, 128 N. W. (2d) 674.

by a review of all the material evidence in the record before us.

Hilboldt next contends that even though there is a finding that as a real-estate broker he orally agreed to act as an agent for the purchase of land, as a matter of law, such agreement is void. In support of this contention he cites sec. 240.10, Stats. This statute provides, in part:

"Every contract to pay a commission to a real estate agent or broker or to any other person for selling or buying real estate . . . shall be void unless such contract or note or memorandum thereof describing such real estate, expressing the price for which the same may be sold or purchased, or terms of rental, the commission to be paid and the period during which the agent or broker shall procure a buyer or seller or tenant, be in writing and be subscribed by the person agreeing to pay such commission."

*Otto v. Black Eagle Oil Co.* (1954), 266 Wis. 215, 63 N. W. (2d) 47, and other cases [2] are cited as authority for the contention that the agreement to retain Hilboldt as an agent is void because it was not in writing.

We cannot accept this contention. In all of the cases cited by Hilboldt, the broker was attempting to collect a commission based in whole or in part upon an oral contract. The words of the statute are: "Every contract to pay a commission to a real estate agent or broker . . . shall be void unless such contract . . . be in writing."

This court has specifically held in *Krzysko v. Gaudynski* (1932), 207 Wis. 608, 242 N. W. 186, that real-estate brokers can become agents for some purposes without a written contract. At page 614 it is stated:

---

[2] *Hale v. Kreisel* (1927), 194 Wis. 271, 215 N. W. 227; *Leuch v. Campbell* (1947), 250 Wis. 272, 26 N. W. (2d) 538; and *Gifford v. Straub* (1920), 172 Wis. 396, 400, 179 N. W. 600.

"Whether the defendant can be held as a constructive trustee as an agent depends on whether his contract of agency, not being in writing and not in conformity with sec. 240.10, should be considered as wholly void and imposing no duty whatsoever upon him. Appellants contend it should be so construed. Sec. 240.10, however, does not require that such a construction be placed upon it. Its declaration is not that a contract of agency, but a contract *'to pay a commission'* is void unless in writing. The purpose of the statute was not to relieve real-estate agents from their obligations as agents, but to protect the public against frauds perpetrated by dishonest agents through falsely claiming oral contracts of agency when another agent effected a sale by which the landowner was subjected to claims for commission by two or more agents, and by falsely claiming agency and claiming a commission for procuring a purchaser when no *bona fide* purchaser was in fact procured. One may become an agent without compensation. Absence of compensation is immaterial. *Wright v. Smith,* 23 N. J. Eq. 106, 111. If a real-estate agent actually agrees orally to purchase land for another and takes money from the other to make the first payment on the purchase price, he must be held to have assumed to act for the other. And having assumed so to act, he should be held to the same obligations of duty as if he were acting under a contract binding the other party to pay him a compensation. . . ."

The *Krzysko Case* has not been overruled and we reaffirm the rule stated therein.

The concern of ch. 136, Stats., and the Wisconsin Real Estate Brokers' Board goes beyond a consideration of the right of brokers or agents to collect a commission for services rendered. The entire scope of the activities of a real-estate broker or salesman when he deals as an agent for other persons in his capacity as a real-estate broker or agent are matters which come within the scrutiny of the board when it appears or is suggested that the broker or agent is acting inconsistent with standards set forth in sec. 136.08 (2).

In *Sphatt v. Roth* (1948), 253 Wis. 339, 346, 34 N. W. (2d) 222, the court said:

"It is the rule in this state that where a broker is authorized to sell his principal's property that for him to purchase it himself he is bound, due to the relationship of principal and agent, by additional and greater obligations and duties than are required in ordinary business transactions between buyer and seller [cases cited]; and that a broker can neither purchase from, nor sell to, his principal unless the latter expressly assents thereto or, with full knowledge of all the facts and circumstances acquiesces in such a course. [Cases cited.]"

In *Pederson v. Johnson* (1919), 169 Wis. 320, 326, 172 N. W. 723, the court said:

"An agent may not take advantage of the confidential relationship existing between himself and his principal for his own benefit even though the principal is not injured thereby. [Cases cited.]"

And at page 324, it is stated:

"No principle in the law of agency is better settled than that the agent may not deal in the business of his agency for his own benefit. All profits made and advantage gained by the agent in the execution of the agency belong to the principal, and it matters not whether such profit or advantage is the result of the performance or of the violation of a duty of the agency if it be the fruit of the agency. All profits and every advantage beyond lawful compensation made by an agent in the business, or by dealing or speculating with the effects of his principal, though in violation of his duty as an agent, and though the loss, if one had occurred, would have fallen on the agent, will, wherever they can be regarded as the fruit or outgrowth of the agency, be deemed to have been acquired for the benefit of the principal. . . ."

In *Ahern v. Florida Real Estate Comm.* (1942), 149 Fla. 706, 709, 6 So. (2d) 857, it is stated:

"The real estate business has become a highly specialized one and the real estate broker is now the confidant of the public in much the same manner as the lawyer and the banker. His relation to the public exacts the highest degree of trust and confidence and the law imposes on appellees [the Commission] the duty of enforcing its standards."

Family Service clearly wanted to purchase real estate. Hilboldt was contacted in the first instance because he was a real-estate broker. When he undertook the task of obtaining real estate for it under the circumstances described in the record he became an agent in his capacity as a real-estate broker. As such agent he subjected himself to the fiduciary duties of an agent, and to the statutory standards of business conduct prescribed by sec. 136.08 (2), Stats.

Affixing additional revenue stamps to the Schmid-Kreiter deeds could be only for the purpose of misrepresenting the actual purchase price or concealing it from his principal. It could not have been done to influence anyone other than Family Service. To say he expended his own funds for unnecessary revenue stamps without any purpose is incredible.

The conclusions of the board that Hilboldt made a substantial misrepresentation by placing additional revenue stamps on the Schmid-Kreiter deeds, and that he failed to disclose a $15,000 profit to his principal, demonstrated untrustworthiness to act as a broker in such a manner as to safeguard the interest of the public, and that Hilboldt was guilty of conduct which constitutes improper or dishonest conduct in violation of sec. 136.08 (2), Stats., are based upon ample and substantial credible evidence in view of the entire record and must be affirmed.

A discretionary reversal under sec. 251.09, Stats., is urged by Hilboldt upon the ground that the real controversy has not been tried. We find no merit to this contention.

Hilboldt's final argument is that the board's order or revocation is void upon its face because the order does not set

forth the period during which a new license would not be granted.

The order of the board is as follows:

"WHEREFORE, IT IS ORDERED that the real estate broker's license of Charles S. Hilboldt d/b/a Charles Hilboldt Investment Real Estate for the year 1964 be and the same is hereby revoked.

"Dated at Janesville, Wisconsin, this 13th day of August, 1964."

Secs. 136.05, 136.06, and 136.07, Stats., provide the procedure for making applications for new and renewal licenses, set forth the qualifications, and fix the time of expiration of such licenses. Real-estate brokers' licenses are issued on an annual calendar-year basis.

"136.07 LICENSES. (1) *Expiration.* A license issued by the board entitles the holder:

"(a) To act as a real estate broker or salesman, as the case may be, up to and including December 31 following issuance of the license."

Sec. 136.08 (2), Stats., set forth above, authorizes revocation by the board but does not provide for any time limitation as to the period of revocation.

Hilboldt relies upon sec. 136.14, Stats., which provides:

"INELIGIBILITY. No license or registration shall be issued to any person whose license or registration has been revoked until the expiration of a period not to exceed 2 years from the date the revocation became finally effective, the period to be determined in each case by the board."

The board revoked Hilboldt's license then currently in force for the year 1964. Without any action of the board that license would expire December 31, 1964, and the holder would be required to make application for a 1965 license as a prerequisite to do business as a real-estate broker.

The statute relied upon by Hilboldt (sec. 136.14) has nothing to do with the board's determination to revoke a license; it simply limits the period in which a new license can issue in the event a new application is made.

The order of the board revoking the license for the year 1964 is valid.

*By the Court.*—Judgment affirmed.