ROY E. HAYS, Executive Secretary, Wisconsin Real Estate ExaminingBoard
You have requested my opinion whether a Wisconsin licensed real estate broker or salesman could engage in a guaranteed sales plan similar to that described below without violating the provisions of sec. 452.10 (2) ((a) through (1)) or sec. 452.05 (2), Stats.
The guaranteed sales plan involves:
1. Appraisal by the real estate broker.
2. A guaranteed valuation analysis, which includes the current market value of the house as appraised by the real estate broker, a listing of the broker's estimate of the normal costs to the owner to sell the home, which includes regular commission at going rate, required repairs to place the house in shape for sale, transfer tax, recording costs, F.H.A. or V.A. discount points, required F.H.A. inspection, abstracting or legal fees, revenue stamps and other costs. These costs would be deducted from the appraised price and the result would be net proceeds to the seller on an ordinary sale if there were no mortgage or guaranteed sales plan. However, in the case illustrated, there was a mortgage and the present amount of the mortgage, plus the costs of the broker holding the property for four months, if necessary, to sell the property for his own account are deducted to arrive at the net guaranteed price to seller. Such costs "to the trade-in company," which is the real estate broker, include interest on money for four months, taxes for four months, maintenance and utilities, a second transfer tax, recording fees, abstracting and legal fees, insurance and revenue stamps. *Page 4 
The real estate owner in effect pays the costs he would pay in an ordinary sale plus the costs the broker would pay in a second sale, estimated on the basis of the broker selling the property for his own account within four months.
3. The guarantee to purchase agreement, in the illustration forwarded, is signed by owner and broker.
a. The agreement describes real estate and included property, provides for conditions on liens or encumbrances, form of conveyance, evidence of title and place of closing.
b. Provides that the broker shall offer the property for sale for the first 30 days at a slight advance over the appraised price, for the next _ days at the appraisal price, and for the next __ days at a slightly lower price, and the broker agrees that if the property is not sold by a given date, he will purchase the property at the net guaranteed sales price as determined in the guaranteed valuation analysis referred to in 2. above.
c. Provides for risk of loss from fire, etc., on owner until deed is recorded, proration of taxes, interest and insurance as of date of settlement.
d. Provides that, if property is sold to third party and broker does not purchase it, owner agrees to pay broker, in addition to regular sales commissions, a fee of 1-1/2 percent of the sale price for the guarantee.
e. Owner agrees to pay any payoff penalty on any mortgage, to give broker termite clearance certificate and to warrant potability of water system and proper functioning of any septic system.
f. Provides that if broker must advance funds to owner to assure settlement on property owner is purchasing prior to settlement of property he is selling, owner will pay broker interest at 8 percent per annum.
I am not aware of any provision of ch. 452, Stats., or of any provision of the insurance or securities laws which would make the plan illegal per se.
The plan would appear to be heavily weighted in favor of the broker, however. *Page 5 
A real estate broker can neither purchase from, nor sell to, his principal unless the principal expressly assents thereto or with full knowledge of all the facts acquiesces in such a course.Sphatt v. Roth (1948), 253 Wis. 339, 34 N.W.2d 222.
As a fiduciary, he must exert his best efforts to effect a sale on the terms listed, and is duty bound to communicate all offers to purchase to his principal unless the principal has issued specific instructions relieving the broker of such duty. He must point out the advantages and disadvantages of any offer to purchase. He has a duty to make full disclosure to the seller of all information material to the transaction.
 Nolan v. Wis. Real Estate Brokers' Board (1958), 3 Wis.2d 510, 89 N.W.2d 317;
 Ford v. Wisconsin Real Estate Examining Board (1970), 48 Wis.2d 91, 179 N.W.2d 786;
 Hilboldt v. Wis. Real Estate Brokers' Board (1965), 28 Wis.2d 474, 137 N.W.2d 482;
 Degner v. Moncel (1959), 6 Wis.2d 163, 93 N.W.2d 857; 54 OAG 31 (1965).
A guaranteed sales plan undoubtedly increases the possibility of fraud, misrepresentation or improper dealing on the part of the broker. The courts would give such close transactions special scrutiny. It might behoove a seller, contemplating entering into such an agreement, to consult with his attorney and to have an independent appraisal made. While sellers have customarily relied upon the judgment of licensed real estate brokers' knowledge of values in setting offering prices, a conflict arises where the broker is interested as a potential contract purchaser, in the event the property is not moved. An unscrupulous broker might not use his best knowledge in the appraisal or best efforts in attempts to advertise, show and sell the property. In addition, some of the cost of sale items in the guarantee valuation analysis can be inflated in favor of the broker where the seller is not fully informed on economic or legal matters even though they are probably negotiable items as between broker and seller. *Page 6 
Such a plan can, of course, be of great value to the seller where the broker makes full disclosure, uses his expert knowledge and exercises his best efforts to effect a sale. In such cases, the seller may be willing to pay the added costs of a guaranteed sale.
RWW:RJV